

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-11-2005

# Oyebanji v. Atty Gen USA

Precedential or Non-Precedential: Precedential

Docket No. 03-4143

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Oyebanji v. Atty Gen USA" (2005). *2005 Decisions.* Paper 618.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/618

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 03-4143
_____

LARRY OLOLADE OYEBANJI,

Appellant

v.

*ALBERTO GONZALES, ATTORNEY GENERAL
OF THE UNITED STATES OF AMERICA;
MR. CATHEL; THE ATTORNEY GENERAL
OF THE STATE OF NEW JERSEY

*(Amended pursuant to Rule 43(c), Fed. R. App. Pro.)
_____

ON APPEAL FROM THE UNITED STATES DISTRICT
COURT
FOR THE DISTRICT OF NEW JERSEY

District Court Judge: Honorable Jerome B. Simandle
(D.C.  No. 01-cv-02126)
_____

Argued: June 18, 2004

Before:  ALITO, SMITH, and WALLACE,* Circuit Judges

(Opinion Filed:   August 11, 2005 )

_____

*Honorable J. Clifford Wallace, Senior Judge of the United
States Court of Appeals for the Ninth Circuit, sitting by
designation.

RICHARD COUGHLIN (argued)
JULIE A. McGRAIN
Office of the Federal Public Defender
800-840 Cooper Street, Suite 350
Camden, N.J.  08102

     *Counsel for Appellant*

MICHAEL A. CHAGARES (argued)
THOMAS R. CALCAGNI
Office of the United States Attorney
970 Broad Street, Suite 700
Newark, N.J.  07102

     *Counsel for Appellee*

---

OPINION OF THE COURT

---

ALITO, <u>Circuit Judge</u>:

Larry Ololade Oyebanji appeals from the District Court's order denying his petition for a writ of habeas corpus.  Oyebanji challenges a decision of the Board of Immigration Appeals ("BIA") holding that his conviction for vehicular homicide under New Jersey law was a "crime of violence" as defined by 18 U.S.C. § 16 and was thus a ground for removal.  In light of the Supreme Court's recent decision in <u>Leocal v. Ashcroft</u>, 125 S.Ct. 377 (2004), we conclude that we must reverse the decision of the District Court, which was issued before <u>Leocal</u> was handed down.

I.

Oyebanji is a citizen of Nigeria and has been a lawful permanent resident of the United States since 1997.  A lawful permanent resident is subject to removal if he or she  commits an "aggravated felony."   <u>See</u> 8 U.S.C. § 1227(a)(2)(A)(iii). Aggravated felonies include any offense that is punishable by at

2

least one year of imprisonment and that is "a crime of violence" as defined in 18 U.S.C. § 16 (and is not a "purely political" offense). 8 U.S.C. § 1101(a)(43)(F).

In February 1998, Oyebanji was arrested in East Orange, New Jersey, after causing a car accident that killed another person. Oyebanji pled guilty to vehicular homicide, in violation of N.J. STAT. ANN. § 2C:11-5(b)(1), driving under the influence of an intoxicating drug ("DUI"), in violation of N.J. STAT. ANN. § 39:4-50, and reckless driving, in violation of N.J. STAT. ANN. § 39:4-96. The New Jersey state court sentenced Oyebanji to six years' imprisonment.

In June 2000, an Immigration Judge ("IJ") held that Oyebanji's conviction for vehicular homicide was an "aggravated felony" under the Immigration and Nationality Act (INA), 8 U.S.C. §1101(a)(43)(F), because it was a felony for which the term of imprisonment is at least one year and a crime of violence as defined in 18 U.S.C. § 16(b).[2] The IJ also found that Oyebanji was ineligible for any form of relief from removal and therefore ordered that he be removed to Nigeria. The BIA affirmed the IJ's decision and dismissed Oyebanji's appeal.

Oyebanji filed a petition for a writ of habeas corpus in the United States District Court for the District of New Jersey, seeking relief from the order of removal. The District Court denied Oyebanji's petition because it found that his offense was a crime of violence. Oyebanji then took the appeal that is now before us.

After hearing oral argument, we held this appeal c.a.v. because the Supreme Court had granted certiorari in Leocal, a case addressing a similar issue. Following the Supreme Court's decision in that case, we invited the parties to file supplemental briefs addressing its application to the case at hand.

---

[2]Oyebanji does not contest that vehicular homicide under N.J. STAT. ANN. § 2C:11-5(b)(1) is a felony for which the term of imprisonment is at least one year.

II.

Where the underlying facts of a habeas petition are undisputed, we exercise plenary review over a district court's decision. See Sierra v. Romaine, 347 F.3d 559, 564 (3d Cir. 2003), vacated on other grounds, 125 S. Ct. 962 (2005).[3] Because the BIA is not charged with administering 18 U.S.C. § 16 and has no special expertise regarding the interpretation of that criminal statute, we do not defer to the BIA's interpretation of that provision. See Francis v. Reno, 269 F.3d 162, 168 (3d Cir. 2001). To determine if a person was convicted of a crime of violence within the meaning of 18 U.S.C. § 16, we use the "categorical" approach. In a case where, as here, the petitioner pled guilty, we look only to the fact of conviction and the statutory definition of the offense, not the person's actual conduct. Taylor v. United States, 495 U.S. 575, 602 (1990); Francis, 269 F.3d at 171-72.

III.

Section 16 defines a crime of violence as follows:
(a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
(b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be

---

[3]Following enactment of the Real ID Act of 2005, Pub. L. 109-13, 119 Stat. 231, all habeas petitions brought by aliens challenging removal that were pending before the district courts were converted to petitions for review and transferred to the appropriate courts of appeals. We held in Bonhometre v. Gonzales, - - - F.3d - - -, No. 04-2037, 2005 WL 1653641 (3d Cir. July 15, 2005), that this command applied also to habeas appeals pending before this Court. Bonhometre at *2. As such, Oyebanji's appeal of the District Court's order denying his habeas petition is now properly converted into a petition for review. See id. Nevertheless, the standard of review regarding questions of law is the same for petitions for review as it was for habeas appeals.

used in the course of committing the offense.

18 U.S.C. § 16.

In Leocal, the Supreme Court held that a criminal DUI offense that either lacks a mens rea component or requires only a showing of negligence in the operation of a vehicle is not a crime of violence under Section 16. The Court noted, however, that Leocal did not present "the question whether a state or federal offense that requires proof of the reckless use of force against a person or property of another qualifies as a crime of violence under 18 U.S.C. § 16." Leocal, 125 S. Ct. at 384 (emphasis in original).

In the present case, both Oyebanji and the government agree that Subsection 16(a) does not apply, and both frame the issue here as whether Oyebanji's felony conviction for vehicular homicide under New Jersey law constitutes a crime of violence under Subsection 16(b), meaning a felony that "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." Under New Jersey law, vehicular homicide requires proof of recklessness. N.J. STAT. ANN. § 2C:11-5(a) ("Criminal homicide constitutes vehicular homicide when it is caused by driving a vehicle or vessel recklessly."); State v. Stanton, 176 N.J. 75, 83-85 (2003).[4] We are therefore required to decide the very question that

---

[4]N.J. STAT. ANN. § 2C:2-2(3) defines "recklessly" as follows:

(3) Recklessly. A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation. "Recklessness," "with recklessness" or equivalent terms have the same meaning.

the Leocal Court did not reach.

IV.

Although Leocal did not decide the question presented here, the Leocal opinion suggests that Oyebanji's crime was not a crime of violence as the Supreme Court understands that term. The cornerstone of the Leocal Court's reasoning was that the concept of the use of physical force against the person or property of another "requires active employment" and "naturally suggests a higher degree of intent than negligent or merely accidental conduct." Leocal, 125 S.Ct. at 382 (emphasis added). The Court noted that this concept is incorporated into both subsections (a) and (b) of 18 U.S.C. § 16. Id. at 382-83. The Court elaborated:

> In construing both parts of § 16, we cannot forget that we ultimately are determining the meaning of the term "crime of violence." The ordinary meaning of this term, combined with § 16's emphasis on the use of physical force against another person (or the risk of having to use such force in committing a crime), suggest a category of violent, active crimes that cannot be said naturally to include DUI offenses. Cf. United States v. Doe, 960 F.2d 221, 225 (C.A.1 1992) (Breyer, C.J.) (observing that the term "violent felony" in 18 U.S.C. § 924(e) (2000 ed. and Supp. II) "calls to mind a tradition of crimes that involve the possibility of more closely related, active violence"). Interpreting § 16 to encompass accidental or negligent conduct would blur the distinction between the "violent" crimes Congress sought to distinguish for heightened punishment and other crimes.

125 S.Ct. at 383 (emphasis added).

The Court's reliance on the ordinary meaning of the term "violent" crime and the Court's repeated reference to "accidental" conduct as falling outside the reach of 18 U.S.C. § 16 have implications for the present case. The quintessential violent crimes – murder, assault, battery, rape, etc. – involve the intentional use of

6

actual or threatened force against another's person, and the term "accidental" is most often used to describe events that did not "occur[] as a result of anyone's purposeful act."  Black's Law Dictionary 16 (8th ed. 1999).  Oyebanji's crime, although plainly regarded by New Jersey as involving a substantial degree of moral culpability, did not involve the intentional use of force but instead required only recklessness.  Particularly because the issue of the application of 18 U.S.C. § 16 to crimes of recklessness was on the Court's mind, see 125 S.Ct. at 384, we cannot overlook the Court's repeated statement that "accidental" conduct (which would seem to include reckless conduct) is not enough to qualify as a crime of violence.[5]

Another feature of Leocal points in the same direction. After concluding that a crime of violence as defined in Section 16 must consist of more than negligence, the Supreme Court stated that its construction of Section 16 was "reinforced" by the way another federal statute uses Section 16.  See Leocal, 125 S. Ct. at 384. Section 101(h) of the INA defines the term "serious criminal offense" as:

> (1) any felony;
> (2) any crime of violence, as defined in Section 16 of Title 18; or
> (3) any crime of reckless driving or of driving while intoxicated or under the influence of alcohol or of prohibited substances if such crime involves personal injury to another.

---

[5]See Bejarano-Urrutia v. Gonzales, — F.3d —, No. 04-2270, 2005 WL 1554805, at *2 (4th Cir. July 5, 2005) ("[T]he conclusion of the Leocal Court that '[i]n no 'ordinary or natural' sense can it be said that a person risks having to 'use' physical force against another person in the course of operating a vehicle while intoxicated and causing injury,' [125 S. Ct.] at 383, strongly indicates that the result in Leocal would have been the same even had a violation of the statute there at issue required recklessness rather than mere negligence.").

8 U.S.C. § 1101(h). The Supreme Court reasoned that the separate listing of "any crime of violence" and "any" injury-causing DUI crime "bolster[ed]" its conclusion that the term crime of violence does not embrace DUI crimes, because interpreting the term "crime of violence" to include DUI crimes would render 101(h)(3) "practically devoid of significance." Leocal, 125 S. Ct. at 384.

Following this reasoning, we cannot ignore that Section 101(h) also lists "any crime of violence" separately from "any crime of reckless driving." We must instead interpret that separate listing as suggesting that injury-causing reckless driving offenses in particular are excluded from the category of crimes of violence. Since vehicular homicide under New Jersey law is a form of reckless driving that causes death, Leocal's reasoning seems to suggest that Oyebanji's offense is excluded from the category of crimes of violence.

We recognize that there are plausible grounds for distinguishing Leocal and that reasonable arguments can be made in support of the proposition that Oyebanji's offense of conviction should be viewed as a crime of violence. But as a lower federal court, we are advised to follow the Supreme Court's "considered dicta." See McCoy v. Mass. Inst. of Tech., 950 F.2d 13, 19 (1st Cir. 1991) ("[F]ederal appellate courts are bound by the Supreme Court's considered dicta almost as firmly as by the Court's outright holdings, particularly when, as here, a dictum is of recent vintage and not enfeebled by any subsequent statement."); see also United States v. Marlow, 278 F.3d 581, 588 n.7 (6th Cir. 2002); Gaylor v. United States, 74 F.3d 214, 217 (10th Cir. 1996); City of Timber Lake v. Cheyenne River Sioux Tribe, 10 F.3d 554, 557 (8th Cir. 1993); Nichol v. Pullman Standard, Inc., 889 F.2d 115, 120 n. 8 (7th Cir. 1989); United States v. Bell, 524 F.2d 202, 206 (2d Cir. 1975). In view of the opinion in Leocal, we hold that Oyebanji's offense was not a crime of violence in the relevant sense. While we appreciate the force of the government's arguments to the contrary, we believe that those arguments must be directed to the Supreme Court or Congress.

Finally, we note that in a case concerning the Pennsylania crime of reckless burning or exploding, this Court "conclude[d]

that § 16 (b) crimes are those raising a substantial risk that the actor will <u>intentionally</u> use force in the furtherance of the offense." <u>Tran v. Gonzales</u>, —F.3d —, No. 02-3879, 2005 WL 1620320, at *5 (3d Cir. July 12, 2005) (emphasis in original).

V.

For the reasons set out above, we reverse the decision of the District Court.