RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 13a0222p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

MARK WAJDA,

        *Petitioner,*

    *v.*

        No. 12-3978

ERIC H. HOLDER, JR., Attorney General,

        *Respondent.*

On Petition for Review of a Decision
of the Board of Immigration Appeals.
No. A024 642 900.

Decided and Filed:  July 23, 2013[*]

Before:  GIBBONS and WHITE, Circuit Judges; COHN, District Judge.[**]

_____

### COUNSEL

_____

**ON BRIEF:** George E. Ward, Canton, Michigan, for Petitioner.  Erica B. Miles, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

_____

### OPINION

_____

AVERN COHN, District Judge.  This is an immigration case.  Mark Wajda ("Wajda") petitions for review of a decision of the Board of Immigration Appeals ("BIA") that denied reconsideration of a final order of removal.  The BIA ordered Wajda removed because it determined that his conviction of two counts of second-degree murder (resulting from a drunk driving offense) constituted the aggravated felony

---

[*] This decision was originally issued as an "unpublished decision" filed on July 23, 2013.  The court has now designated the opinion as one recommended for full-text publication.

[**] The Honorable Avern Cohn, Senior United States District Judge for the Eastern District of Michigan, sitting by designation.

offense of "murder" under immigration law.  For the reasons that follow, we affirm the BIA's decision and deny Wajda's petition for review.

## I.

### A.

Wajda is a native and citizen of Poland.  In July of 1982, at the age of 24, he was admitted to the United States as a refugee.  He adjusted his status to permanent resident in August of 1983.  In 2002, Wajda was involved in a drunk driving incident in which an elderly couple died.  Wajda rear-ended the victims' car on his way to work in the early morning hours.  He had no prior criminal history.  Wajda was originally charged in state court with two counts of second-degree murder and two counts of Operating Under the Influence of Liquor ("OUIL") Causing Death.  Wajda says that the prosecutor offered to have Wajda plead guilty to the OUIL charges with a recommended sentence of probation.  However, no plea agreement was ever consummated and another prosecutor took over the case.  Meanwhile, Wajda's retained counsel withdrew and Wadja was given a court-appointed attorney.  On April 11, 2003, Wajda pleaded *nolo contendre* to two counts of second-degree murder, in violation of Mich. Comp. Laws § 750.317 and the prosecutor dropped the OUIL Causing Death charges.  Wajda was sentenced to eight to twenty years' imprisonment.

In 2008, the Department of Homeland Security ("DHS") commenced removal proceedings against Wajda.  The Notice to Appear ("NTA") charged Wajda as subject to removal on two counts under section 237(a)(2)(A)(iii) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(2)(A)(iii):  (1) as an alien convicted of a "crime of violence" aggravated felony, defined under section 101(a)(43)(F) of the INA, 8 U.S.C. § 1101(a)(43)(F); and (2) as an alien convicted of the aggravated felony offense of "murder," defined under section 101(a)(43)(A) of the INA, 8 U.S.C. § 1101(a)(43)(A).

Wajda appeared *pro se* during his removal proceedings.  At a preliminary hearing before the immigration judge on March 30, 2010, Wajda admitted the allegations of fact

in the NTA, *i.e.*, that he was convicted in April of 2003 of two counts of murder in the second-degree. DHS submitted proof of these convictions, which the immigration judge admitted into evidence. The immigration judge sustained both charges of removability.

Wajda applied for deferral of removal to Poland under the regulations implementing the United States' obligations under the Convention Against Torture ("CAT"). The immigration judge held a hearing on Wajda's CAT application on November 23, 2010. At the hearing, Wajda testified that he feared returning to Poland after being gone 30 years and because he would be interrogated and harassed by Polish authorities because of his involvement in "information sharing" with students when he worked at Polytechnic University in Warsaw. He also testified that his father still resides in Poland. Additionally, Wajda testified that he did not believe Poland was a democracy and that he believed he and his wife would have problems in Poland. Finally, although Wajda admitted to visiting his father in Poland for three days in 1998 without incident, he explained that it would be different if he and his wife had to remain there.

Two other witnesses testified at the CAT hearing. Wajda's wife testified that his convictions were the result of an accident and that Wajda feared returning to Poland because the Communists are waiting to take over. She also testified that he was afraid to go to Poland because of Wajda's prior dealings with the Russians and Communists relating to oil. Father James O'Reilly also testified on Wajda's behalf regarding his understanding of the circumstances surrounding Wajda's conviction. At the conclusion of the CAT hearing, the immigration judge accepted the 2009 U.S. Department of State Country Report on Human Rights Practices in Poland into evidence.

On November 23, 2010, the immigration judge issued a decision, concluding that Wajda is removable both as an alien convicted of "murder" under INA section 101(a)(43)(A) and as an alien convicted of "a crime of violence" under INA section 101(a)(43)(F). The immigration judge reasoned that second-degree murder under Michigan law sufficiently matched the elements of murder under the INA. Further, the immigration judge found that second-degree murder qualified as a crime of violence. The immigration judge also denied Wadja's CAT application, finding he failed to meet

his burden of demonstrating that he more likely than not would be tortured if he returned to Poland.

**B.**

**1.**

Wajda subsequently retained counsel and appealed the immigration judge's decision to the BIA. On April 9, 2012, the BIA issued a final decision affirming the immigration judge and finding that Wajda's conviction[1] for second-degree murder constitutes the aggravated felony offense of "murder," as defined under section 101(a)(43)(A) of the INA, 8 U.S.C. § 1101(a)(43)(A). *Matter of M-W-*, 25 I&N Dec. 748 (BIA 2012). The BIA expressly declined to consider whether Wajda was also removable as an aggravated felon for committing a "crime of violence" under section 101(a)(43)(F), 8 U.S.C. § 1101(a)(43)(A).[2] The BIA held that Wajda was therefore ineligible for asylum or withholding of removal under the Act. *Id*. at 760.

The BIA first explained the common law and federal definitions of murder, as well as Michigan's second-degree murder statute and jurisprudence. The BIA noted that establishing malice under Michigan law does not require the showing of a specific intent to kill, but also includes the intent to perform an act in wanton and willful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm. In rejecting Wajda's appeal, the BIA explained:

---

[1]Although Wajda pleaded *nolo contendre* to second-degree murder, under immigration law it is considered a conviction. The statute defines a conviction as follows:

> [A] formal judgment of guilt of the alien entered by a court or, if adjudication of guilt has been withheld, where—(i) a judge or jury has found the alien guilty *or the alien has entered a plea of guilty or nolo contendre* or has admitted sufficient facts to warrant a finding of guilt, and (ii) the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed.

INA § 101(a)(48)(A), 8 U.S.C. § 1101(a)(48)(A) (emphasis added).

[2]The BIA also rejected Wajda's argument based on the Supreme Court's decision in *Padilla v. Kentucky*, 599 U.S. 356 (2010), explaining that a challenge under *Padilla* must be brought in the state courts in an appropriate motion seeking to overturn or vacate the conviction based on ineffective assistance of counsel. Finally, the BIA agreed that Wajda had not established a claim under CAT.

We conclude that under Michigan law, the respondent was found to have killed another human being with malice aforethought, matching the generic elements of the crime of murder. Whether or not he was voluntarily intoxicated at the time has no bearing on the fact that he was determined through a judgment of guilt to have acted in wanton and willful disregard of the likelihood that the natural tendency of his actions was to cause death or great bodily harm. We are therefore unpersuaded by the respondent's argument that we should not consider his convictions to fall under section 101(a)(43)(A) of the Act because in Michigan, a prosecutor need not establish that a defendant had an "intent to kill." While this is true, the operative mens rea in both the generic definition of murder and under Michigan law is substantially the same--malice aforethought or a minimum of extreme recklessness as to the serious risk or natural consequence of death or serious bodily injury as a result of the defendant's actions.

Moreover, in both the generic definition and under Michigan law, malice can be shown by proving a reckless and wanton disregard for human life or the intent to do great bodily harm. The Michigan Supreme Court has long recognized that "if a mortal blow was malicious, although not given with intent to kill, or if death ensued from an act accompanying an unlawful collateral act, or under circumstances which showed general malice, such as a reckless disregard of the safety or lives of others, the killing would be murder." *People v. Potter*, 5 Mich. at 4 (explaining that the purpose behind enactment of the statute specifying degrees of murder was to "separate," for purposes of punishment, first-degree murder offenses); *accord People v. Garcia*, 247 N.W.2d 547 (Mich. 1976), *abrogated on other grounds*, *Strickland v. Washington*, 466 U.S. 668 (1984) (regarding ineffective assistance of counsel). While the intent to kill is an element of first-degree premeditated murder in Michigan, it is not an element of the offense of second-degree murder, of which the respondent was convicted. *People v. Garcia*, 247 N.W.2d at 550 (stating that "first degree murder. . , requir[es] an intention to take life"). Even absent a requirement that a prosecutor must prove an intent to kill, a conviction for second-degree murder under section 750.317 of the Michigan statutes is nonetheless categorically one for "murder" as defined in section 101(a)(43)(A) of the Act, because it conforms to the generic definition of that term.

*Matter of M-W-*, 25 I&N Dec. 748, 758–59 (BIA 2012).

**2.**

On April 25, 2012, Wajda moved for the BIA to reconsider its decision.  In his motion, Wajda primarily argued that the BIA failed to consider an "identical" decision from the Court of Appeals for the Third Circuit in *Oyebanji v. Gonzales*, 418 F.3d 260 (3d Cir. 2005).  On July 17, 2012, the same three-member panel of the BIA denied the motion to reconsider.

**II.**

**A.**

As an initial matter, Respondent contends that to the extent Wajda is challenging the BIA's final decision on removal, the panel should find that it lacks jurisdiction to do so.  We agree.  The BIA affirmed the immigration judge's final order of removal on April 9, 2012.  Generally, once an alien is found to be removable in a final agency order, s/he can file one motion to reconsider and one motion to reopen the removal proceedings with the agency, *see* 8 U.S.C. § 1229a(c)(6)–(7), or s/he can proceed directly to a court of appeals.  8 U.S.C. § 1252(b)(2).  This time limitation is enforced strictly, and courts lack jurisdiction to review a BIA decision when a petitioner fails to seek judicial review of an order within the applicable time period.  *See Prekaj v. INS*, 384 F.3d 265, 268 (6th Cir. 2004).  A motion to reconsider must be filed with the agency "within 30 days of the date of entry of a final administrative order of removal."  8 U.S.C. § 1229a(c)(6)(B).  Here, Wajda filed a timely motion for reconsideration.  However, he did not file a petition for review of the BIA's final decision on removal.  The Supreme Court has held that after a final order of removal is entered by the BIA, pursuing further review within the agency does not toll the time period for seeking judicial review in the court of appeals under 8 U.S.C. § 1252(b)(1) or divest an agency decision of its finality.  *Stone v. INS*, 514 U.S. 386, 405–06 (1995); *see Mu Ju Li v. Mukasey*, 515 F.3d 575, 578 (6th Cir. 2008).  As this court has explained:

> a petition for appellate-court review does not toll the time for filing a motion for reconsideration with the agency. [*Randhawa v. Gonzales*, 474 F.3d 918, 921 (6th Cir. 2007)].  Therefore, an alien must observe separate

time limitations for proceedings within the agency and within the judicial system, even if it results in several petitions for review ultimately pending before the court of appeals.

*Gor v. Holder*, 607 F.3d 180, 185 (6th Cir. 2010). Thus, if Wajda wanted to preserve appellate review of the BIA's final decision on removal, he needed to file a petition in this court within 30 days. He did not. His failure divests the court of jurisdiction to consider the BIA's final decision. Therefore, the only decision which is properly before this court for review is the BIA's order denying Wajda's motion for reconsideration.

Respondent likewise contends that because Wajda's opening brief presents the arguments he made before the immigration judge and the BIA initially, and fails to mention or otherwise discuss his motion for reconsideration, the court should find Wajda has waived all appellate review. We decline to do so. Rather, we will review the BIA's order on reconsideration from which Wajda timely appealed. Our discussion follows.

**B.**

**1.**

BIA regulations authorize a motion for reconsideration of a BIA decision and provide that such a motion "shall state the reasons for the motion by specifying the errors of fact or law in the prior Board decision and shall be supported by pertinent authority." 8 C.F.R. § 1003.2(b)(1). The BIA's decision to deny a motion for reconsideration is reviewed for abuse of discretion. *Dawood-Haio v. INS*, 800 F.2d 90, 95 (6th Cir. 1986). "The BIA abuses its discretion when it acts arbitrarily, irrationally or contrary to law." *Sswajje v. Ashcroft*, 350 F.3d 528, 532 (6th Cir. 2003) (citing *Babai v. INS*, 985 F.2d 252, 255 (6th Cir. 1993)). Stated another way, an abuse of discretion occurs if the denial "was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or group." *Allabani v. Gonzales*, 402 F.3d 668, 675 (6th Cir. 2005).

**2.**

The BIA did not abuse its discretion in denying Wajda's motion for reconsideration. The motion alerted the BIA to no legal arguments that had not already been presented in Wajda's appeal. This court has found no abuse of discretion where, as here, "a motion to reconsider raised the identical issues and arguments the BIA previously rejected." *Mulla v. Holder*, 462 F. App'x 592, 596 (6th Cir. 2012) (citing *Sunarto v. Mukasey*, 306 F. App'x. 957, 962 (6th Cir. 2009)). Moreover, as explained below, the BIA properly rejected Wajda's arguments on reconsideration.

Wajda's primary contention is that the BIA erred in failing to follow the Third Circuit's decision in *Oyebanji*, and to a lesser extent, the Supreme Court's decision in *Leocal v. Ashcroft*, 543 U.S. 1 (2004). His argument that these decisions control the outcome of his removability lacks merit. Significantly, both of these decisions involved removability under INA section 101(a)(43)(F) based on an aggravated felony conviction for a "crime of violence." These decisions did not involve removability under INA section 101(a)(43)(A) based on an aggravated felony conviction for "murder." Wajda was ordered removed under INA section 101(a)(43)(A), not INA section 101(a)(43)(F). The BIA's decision on reconsideration fully explains the fundamental flaw in Wajda's argument:

> We first reject the respondent's argument that *Oyebanji v. Gonzales*, *supra*, dictates a finding that his conviction for second-degree murder under Michigan law is not an aggravated felony. Our decision sustaining the charge of removal determined that the respondent's second-degree murder conviction under Michigan law matched the generic definition of "murder" that prevailed at the time that the "murder" aggravated felony ground of removal (pursuant to sections 237(a)(2)(A)(iii) and 101(a)(43)(A) of the Act) was added to the Act in 1988. *Matter of M-W-*, *supra*, at 750-58. *Oyebanji v. Gonzales*, *supra*, concerned the question whether a New Jersey conviction for vehicular homicide was a "crime of violence," rendering the alien removable under sections 237(a)(2)(A)(iii) and 101(a)(43)(F) of the Act for a crime of violence.
>
> Therefore, although the factual circumstances of Oyebanji's and the respondent's convictions appear similar, the operative removal

charges at issue in the two cases are different. The critical question in a "crime of violence" analysis for purposes of an aggravated felony charge of removal is whether the underlying conviction involves the use of "physical force" as set forth in 18 U.S.C. § 16. *See* section 101(a)(43)(F) of the Act (referencing this section of the United States Code). Specifically, the Third Circuit in *Oyebanji v. Gonzales*, *supra*, was concerned with whether the New Jersey offense "by its nature involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." *Oyebanji v. Gonzales*, *supra*, at 263 (noting focus on 18 U.S.C. § 16(b)). On this central question, the court found that because New Jersey's vehicular homicide statute could be violated through purely reckless conduct, which accordingly would lack the intentional use of force, a violation of the New Jersey statute did not constitute a "crime of violence" type of aggravated felony. *Id.* at 264-65 (*citing Leocal v. Ashcroft*, 543 U.S. 1 (2004)).

Our prior decision affirming the Immigration Judge's order of removal for the respondent analyzed a different type of aggravated felony-i.e, an aggravated felony arising under section 101(a)(43)(A) of the Act, covering "murder, rape, and sexual abuse of a minor." This ground of removal does not cross-reference 18 U.S.C. § 16, and, therefore, decisions such as *Oyebanji v. Gonzales*, *supra*, and *Leocal v. Ashcroft*, *supra*, do not control the outcome of this case. Because few published decisions construed section 101(a)(43)(A) of the Act, we conducted a categorical analysis comparing the respondent's conviction under section 750.317 of the Michigan Compiled Laws to the "murder" aggravated felony. *Matter of M-W-*, *supra*, at 750-55. The respondent's Michigan conviction was a categorical match for the aggravated felony of murder because both the state law crime and the generic definition of murder contemplate the killing of another with, inter alia, a depraved heart or the extreme indifference to human life. *Id.* at 756. As we specifically found, in order for an act to constitute murder, a person need not act with the intent to kill another person, *Id.* at 758.

Furthermore, contrary to the respondent's contention in support of his motion to reconsider, the *Oyebanji v. Gonzales*, *supra*, decision does not conclude that because the underlying offense contained "no 'intent to kill;' therefore [there was] no aggravated felony." Respondent's Reply Brief at 2. Rather, as previously explained, the *Oyebanji v. Gonzales*, *supra*, decision was concerned with whether the underlying crime required the *intentional use of physical force*, consistent with a "crime of violence" analysis arising under 18 U.S.C. § 16(b).

(AR at p. 3–4, internal footnotes omitted).

Similarly, the alien in *Leocal* was convicted of driving under the influence of alcohol ("DUI") and causing serious bodily injury in an accident in violation of Florida law. The Supreme Court held that the conviction was not a "crime of violence," and therefore, was not an "aggravated felony" warranting deportation under section 101(a)(43)(F). *See Leocal*, 543 U.S. at 10.

Simply stated, although Wajda believes that his circumstances are akin to the aliens in *Oyebanji* and *Leocal*, he is mistaken. Admittedly, the cases are factually similar to the extent that he, like the aliens in *Oyebanji* and *Leocal*, was removed based on convictions relating to drunk driving. However, unlike the aliens in *Oyebanji* and *Leocal*, Wajda was convicted of second-degree murder, not simply an alcohol-related offense. Moreover, Wajda was ordered removed under a completely different section of the INA. Thus, the BIA did not err in concluding initially, and on reconsideration, that these decisions did not control the outcome of his removal.

Wajda's argument that the BIA misapplied the "categorical approach" to Michigan's second-degree murder statute, must also be rejected. The BIA found, after reviewing Michigan's definition of second-degree murder, that his second-degree murder convictions were a categorical match[3] to the generic definition of murder. Wajda has failed to show that the BIA's approach was contrary to law.

Wajda also contends that finding him removable violates "Congressional intent" in that it allows for disparate treatment of aliens. This argument is again premised on the misunderstanding that the BIA categorized his convictions as a "crime of violence." It did not. Rather, the BIA found him removable based on the aggravated felony of "murder." To the extent there is any disparity, it would be between the New Jersey and Florida courts and the Michigan court in their treatment of the conduct involved and the

---

[3]Title 18 U.S.C. § 16(a) defines "crime of violence" as "an offense that has as an element the use . . . of physical force against the person or property of another," and § 16(b) defines it as "any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." Section 16 requires a court to look to the elements and nature of the offense of conviction in determining whether a conviction falls within its ambit. In this case, the BIA concluded that Michigan's second-degree murder statute incorporated the common law definition of murder, and therefore, was a match to the generic definition of murder in the INA.

convictions entered against the defendants before them.  Although  Wajda argues that the facts surrounding his conviction call for lesser charges, he cannot change the fact that he pleaded guilty to second-degree murder.  Even if Wajda would have been in a better situation in terms of removability had he been able to plead to a different, lesser offense related to his drunk driving, it is not for the immigration courts, or this court on review of a decision from those courts, to revisit the propriety of the state charges to which he pleaded guilty.  *See Oyebanji*, 418 F.3d at 262 ("In a case where, as here, the petitioner pled guilty, we look only to the fact of conviction and the statutory definition of the offense, not the person's actual conduct." (citing *Taylor v. United States*, 495 U.S. 575, 602 (1990) (other citations omitted)).

Finally, Wajda asks this court to hold his petition in abeyance  so as to enable him to petition the Michigan courts on the basis of *Padilla v. Kentucky,* 599 U.S. 356 (2010*).*  There is no indication in the record, however, that he has attempted to seek such relief in the Michigan courts.  Moreover, as Respondent points out, he is not likely to prevail in state court given that the Michigan Court of Appeals has held that *Padilla* does not apply retroactively under federal or state law.  *See People v. Gomez,* 820 N.W. 2d 217, 222 (Mich. Ct. App. 2012).  Moreover, the Supreme Court has recently held that *Padilla* does not apply retroactively under federal law.  *Chaidez v. United States*, 133 S. Ct. 1103, 1107 (2013).  Thus, we decline to hold Wajda's petition in abeyance.

**III.**

For the reasons stated above, the BIA's decision is AFFIRMED and Wajda's petition for review is DENIED.