TORRUELLA, Circuit Judge,
Dissenting.
The majority fails to adequately justify its departure from the Supreme Court’s direction and the analogous decisions of our sister circuits. Indeed, the Supreme Court’s message is clear. In United States v. Castleman, — U.S. -, 134 S.Ct. 1405, 188 L.Ed.2d 426 (2014), the Court noted that we are the only outlying circuit on this question: our prior precedent is inconsistent with every other circuit court to consider the issue. See id. at 1414 n. 8 (contrasting our past position with that of the Second,. Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, and Eleventh Circuit Courts of Appeals, which have “uniformly held that recklessness is not sufficient” to “constitute a ‘use’ of force”). The Court then remanded the instant cases for reconsideration in light of Castleman, see Armstrong v. United States, — U.S. -, 134 S.Ct. 1759, 188 L.Ed.2d 590 (2014), implicitly suggesting that we bring our holdings in line with the other federal circuit courts of appeals. We are obligated to heed the Supreme Court’s direction. See McCoy v. Mass. Inst. of Tech., 950 F.2d 13, 19 (1st Cir.1991) (“[Fjederal appellate courts are bound by the Supreme Court’s considered dicta almost as firmly as by the Court’s outright holdings, particularly; when, as here, a dictum is of recent vintage and not enfeebled by any subsequent statement.”). Not only are the Supreme Court’s instructions mandatory, but the legal reasoning and analysis in the cases cited by the Court are also correct. •
On remand, this ease, requires us to answer, at the very least, one question of statutory interpretation: whether a Maine *188 conviction for the “reckless” causation of an “offensive physical contact” necessarily involves the “use or attempted use of physical force” as required to establish a “misdemeanor crime of domestic violence” for purposes of 18 U.S.C. § 922(g)(9). The majority fails to persuasively explain why, ■in all cases, the merely reckless causation of offensive physical contact categorically must involve the “use or attempted use of physical force,” 18 U.S.C. § 921(a)(33)(A), particularly in light of the host of cases strongly suggesting otherwise. As explained herein, these cases hold that the “use” of physical force requires the active or intentional employment of force, which cannot be satisfied by merely reckless conduct.
Confronting this question, we are not acting upon an empty stage; rather, we must start with the backdrop painted by the Supreme Court in Castleman, which is the basis for the instant remand. Indeed, the Castleman Court questioned whether the “merely reckless causation” of even bodily injury — much less offensive physical contact — could constitute the “use” of force, noting that “the Courts of Appeals have almost uniformly held that recklessness is not sufficient,” because the “use” of force requires a greater degree of intentionality. ‘Castleman, 134 S.Ct. at 1414 & n. 8.
Although the majority opinion correctly observes that those circuit court cases involved different statutes, the operative language is nearly identical and the majority fails to persuasively explain why the result should be different here. All of the analogous eases involved the “use” of “force,” and most interpreted 18 U.S.C. § 16. See id. at 1414 n. 8 (listing cases). Several of these cases[6] analyzed § 16(a), which defines a “crime of violence” as “an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another.” 18 U.S.C. § 16(a). That language is materially indistinguishable, as relevant here, from the Lautenberg Amendment’s definition of a “misdemeanor crime of domestic violence” as an offense that “has, as an element, the use or attempted use of physical force.” 18 U.S.C. § 922(g)(9); id. § 921(a)(33)(A). “[Wjhen Congress uses the same language in two statutes having similar purposes,- ... it is appropriate to presume that Congress intended that text to have the same meaning in both statutes.” Smith v. City of Jackson, Miss., 544 U.S. 228, 233, 125 S.Ct. 1536, 161 L.Ed.2d 410 (2005).[7]
*189 The majority opinion concedes that this case presents a “close” question. Ante, at 177. I agree. Given the Supreme Court and circuit court cases interpreting similar statutes and holding that merely reckless conduct is insufficient to constitute the “use” of physical force, I believe that the rule of lenity also forecloses the defendants’ convictions here. Indeed, it is a “familiar principle” that “ ‘ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity’” towards the' accused. Skilling v. United States, 561 U.S. 358, 410, 130 S.Ct. 2896, 177 L.Ed.2d 619 (2010) (quoting Cleveland v. United States, 531 U.S. 12, 25, 121 S.Ct. 365, 148 L.Ed.2d 221 (2000)).[8] The rule of lenity bars courts from giving the text of a criminal statute “a meaning that is different from its ordinary, accepted meaning, and that disfavors the defendant.” Burrage v. United States, — U.S. -, 134 S.Ct. 881, 891, 187 L.Ed.2d 715 (2014). In my view, by permitting a conviction based on the reckless causation of offensive physical contact, the government and the majority seek to give the “use ... of physical force” a meaning different from that phrase’s ordinary meaning. The ordinary meaning of the “use” of physical force requires the intentional employment of force, and not the merely accidental, negligent, or reckless use of such force. Cf. Leocal v. Ashcroft, 543 U.S. 1, 4, 125 S.Ct. 377, 160 L.Ed.2d 271 (2004) (giving an ordinary and natural reading to the phrase “ ‘use ... of physical force against the person or property of another,’ ” and holding that this phrase requires “a higher degree of intent than negligent or merely accidental conduct” (quoting 18 U.S.C. § 16(a))); id. (explaining that “‘use’ requires active employment,” and reasoning that “a person would ‘use ... physical force against’ another when pushing him ... [but not] by stumbling and falling into hini”); García v. Gonzales, 455 F.3d 465, 468 (4th Cir.2006) (holding that “the use ... of physical force” requires the intentional employment of physical force).. Moreover, given that the Supreme Court has stated that (1) “the merely reckless causation of bodily injury ... may not be a ‘use’ of force,” and (2) “the Courts of Appeals have almost uniformly held that recklessness is not sufficient” to constitute the “use” of force, Castleman, 134 S.Ct. at 1414 & n. 8, I cannot see how the proper application of the rule of lenity permits affirmance of the defendants’ convictions.
I express no opinion here on whether the “use” of physical force is satisfied by either the reckless causation of bodily injury or the intentional or knowing causation of offensive physical contact. Rather, I confine my inquiry to one subsumed offense under the Maine assault statutes: the reckless causation of offensive physical *190 contact. Although the majority states that they fail to see why the distinction between “bodily injury” and “offensive physical contact” “is material to the analysis here,” ante, at 185, I explain herein why that distinction matters. See infra Section 11(B)(1). Namely, even if recklessness were a sufficient mens rea for purposes of bodily injury, a conviction under the Lau-tenberg Amendment nonetheless cannot rest on the reckless causation of offensive physical conduct in Maine.[9]
The Supreme Court has stated that, under the Lautenberg Amendment, Congress classified as a “ ‘misdemeanor crime of do- ■ mestic violence’ ” “the type of conduct that supports a common-law battery conviction.” Castleman, 134 S.Ct. at 1411. The Supreme Court has further explained that “the common-law crime of battery ... consisted of the intentional application of unlawful force against the person of another.” Johnson v. United States, 559 U.S. 133, 139, 130 S.Ct. 1265, 176 L.Ed.2d 1 (2010) (emphasis added); see also United States v. Bayes, 210 F.3d 64, 69 (1st Cir. 2000) (“[T]he common law provided that an assault committed by way of a battery did not require an intent to cause or to threaten an injury as long as the defendant touched another in a deliberately offensive manner without a valid reason to do so.”) (emphasis added); State v. Rembert, 658 A.2d 656, 658 (Me.1995) (stating that “[ujnpermitted and intentional contacts ... [are] actionable as an offensive contact”) (emphasis added); cf. Wayne R. LaFave, 2 Substantive Criminal Law § 16.2(c)(2) n. 32 (2d ed.) (“[Wjith the tort of battery an intention to injure or touch offensively is needed”); Black’s Law Dictionary 182 (10th ed.2014) (defining tortious battery as a “nonconsensual, intentional, and offensive touching of another without lawful justification”) (emphasis added). To trigger a violation of the Lau-tenberg Amendment, therefore, the relevant precedent counsels that the offensive touch must be caused intentionally and not merely recklessly. By contrast, the Maine statutes at issue here permit conviction for recklessly causing an offensive touch.[10] Therefore, a conviction under either of the Maine assault statutes implicated here does not categorically establish a violation *191 of . the Lautenberg Amendment. Given that the record does not permit a conclusion that the defendants’ Maine convictions rested on a subsumed offense that does constitute a violation of the Lautenberg Amendment, the federal convictions at issue here cannot stand.[11]
After giving careful consideration to the issues involved, engaging in the necessary statutory interpretation and legal analysis, and applying the relevant precedent, I heed the Supreme Court’s direction and follow the lead of our sister circuits in disagreeing with the majority’s conclusion. Therefore, I respectfully dissent.
I. Legal Background
A. The Statutory Framework
1. The Lautenberg Amendment
The defendants here were charged with violating the Lautenberg Amendment to the Gun Control Act of 1968, now codified at 18 U.S.C. § 922(g)(9) (the “Lautenberg Amendment” or “ § 922(g)(9)”). Under the Lautenberg Amendment, it is unlawful for any person “who has been convicted in any court of a misdemeanor crime of domestic violence, to ... possess in or affecting commerce, any firearm or ammunition.” 18 U.S.C. § 922(g)(9). For these purposes, a “misdemeanor crime of domestic violence” is further defined in 18 U.S.C. § 921(a)(33)(A) as an offense that:
(I) is a misdemeanor under Federal, State, or Tribal law; and
(ii) has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a *192 child in common, by a person who is cohabiting with or has cohabited with the victim as a spouse, parent, or guardian, or by a person similarly situated to a spouse, parent, or guardian of the victim[.]
Id. § 921(a)(33)(A) (emphases added).
2. The Relevant Maine Assault Statutes
The defendants argue that the relevant Maine assault statutes do not “ha[ve], as an element, the use or attempted use of physical force.” See id. Under Maine law, a defendant is guilty of “domestic violence assault” if (1) the defendant violates the Maine simple assault provision, and (2) “the victim is a family or household member.” See Me.Rev.Stat. tit. 17-A, § 207-A(l)(A).
Turning to the simple assault provision in the Maine Criminal Code, a person is guilty of “assault” if “[t]he person intentionally, knowingly or recklessly causes bodily injury or offensive physical contact to another person.” See § 207(1)(A). Thus, there are six different, divisible permutations of the Maine simple assault statute, each of which can form the basis for a section 207 assault conviction. United States v. Carter, 752 F.3d 8, 17-18 (1st Cir.2014) (“The Maine general-purpose assault statute is divisible into six permutations of subsumed offenses, based on the combination of one element from each of two categories: (1) mens rea (‘intentionally, knowingly or recklessly’), and (2) actus reus (‘causes bodily injury or offensive physical contact to another person’).” (quoting § 207(1)(A))). These six subsumed offenses are illustrated in the following chart:
The six variants of the Maine simple assault statute:
Maine simple assault Actus Reus statute,
Me.Rev.Stat. tit. 17-A, . . .causes bodily injury. . . .causes offensive physical § 207(1)(A) contact.
Intentionally 1. Intentionally causes bodily in- 4. Intentionally causes . . . jury. offensive physical contact
Mens Rea Knowingly 2. Knowingly causes bodily 5. Knowingly causes offensive . . . injury. physical contact.
Recklessly 3. Recklessly causes bodily • 6. Recklessly causes offensive ... injury. physical contact.
In Maine state court, Armstrong was convicted of Maine domestic-violence assault under section 207-A, and Voisine was convicted of Maine simple assault under section 207.[12] These prior convictions served as the predicate offenses for the defendants’ § 922(g)(9) charges, which are the subject of the instant appeal. A simple assault statute lacking a domestic-relationship element (such as Voisine’s prior offense of conviction in Maine) can nonetheless serve as the predicate offense for a misdemeanor crime of domestic violence, so long as the domestic-relationship ele *193 ment is proved in the subsequent federal prosecution. See United States v. Hayes, 555 U.S. 415, 418, 129 S.Ct. 1079, 172 L.Ed.2d 816 (2009) (holding “that the domestic relationship, although it must be established beyond a reasonable doubt in a § 922(g)(9) firearms possession prosecution, need not be a defining element of the predicate offense”).
B. The Categorical and Modified Categorical Approaches
Given the foregoing statutory framework, we must analyze whether the elements of the Maine assault statute necessarily fulfill the requirements of the Lautenberg Amendment. In cases such as this — where a court must decide whether a prior conviction for an earlier offense (like assault) satisfies one of the elements of the offense in a subsequent prosecution (here, for example, whether the earlier offense “has, as an element, the use ... of physical force,” 18 U.S.C. § 921(a)(33)(A)) — the court determines whether it is appropriate to apply the categorical approach or the modified categorical approach.
1.The Categorical Approach
In Taylor v. United States, 495 U.S. 575, 600, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), the Supreme Court described the categorical approach, under which courts “look[ ] only to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions.” See also United States v. Dávila-Félix, 667 F.3d 47, 56 (1st Cir.2011) (same). If the “statutory definition” of the prior offense necessarily meets the requirements of the subsequent offense at issue, then the court can determine that a conviction for the prior offense categorically constitutes a valid predicate offense for purposes of the later prosecution. See Castleman, 134 S.Ct. at 1414.
2. The Modified Categorical Approach
Some statutes, like the Maine assault statutes at issue here, are “divisible”: they “set[] out one or more elements of the offense in the alternative.” See Descamps v. United States, — U.S. -, 133 S.Ct. 2276, 2281, 186 L.Ed.2d 438 (2013). For these statutes, some permutations or variants of the subsumed offenses may categorically meet the requirements of the subsequent offense, whereas others may not. Accordingly, for these divisible statutes, courts may apply the' “modified categorical approach” to determine which variant or subsumed offense formed the basis for the prior conviction, and thus whether that prior conviction can serve as a valid predicate offense for the subsequent prosecution. See Castleman, 134 S.Ct. at 1414. Under this approach, a court may “consult[ ] the trial record — including charging documents, plea agreements, transcripts of plea colloquies, findings of fact and conclusions of law from a bench trial, and jury instructions and verdict forms” — in order to “determine which statutory phrase was the basis for the conviction” under such a divisible, statute. Johnson, 559 U.S. at 144, 130 S.Ct. 1265. These documents are often called “Shepard documents,” after Shepard v. United States, 544 U.S. 13, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005) (plurality opinion). See, e.g., Carter, 752 F.3d at 19-20 & 19 n. 12.
3. Application
Under established precedent not called into doubt by Castleman and not challenged here, certain subsumed offenses under the Maine assault statutes (such as the intentional or knowing causation of bodily injury) are unequivocally valid predicate
*194 offenses for the Lautenberg Amendment. See Castleman, 134 S.Ct. at 1415 (“It is impossible to cause bodily injury without applying force in the common-law sense,” and “the knowing or intentional application of force is a ‘use’ of force.”). If the Shepard documents showed that the defendants’ prior assault convictions were for those particular subsumed offenses, for example, then we would be able to apply the modified categorical approach and affirm the defendants’ Lautenberg Amendment convictions without reaching the recklessness issue. See Carter, 752 F.3d at 18 n. 11 (reasoning that under the modified categorical approach, if the Shepard documents showed that the defendant’s prior Maine conviction was for intentional or knowing conduct, then the court could affirm his conviction under the Lautenberg Amendment). The parties agree, however, that the Shepard documents for Armstrong’s and Voisine’s underlying Maine convictions are inconclusive and do not reveal which variants of the Maine assault statutes served as the bases for their convictions. Therefore, the modified categorical approach cannot resolve this appeal.
Rather, we must apply the categorical approach to determine whether the statutory definitions of the Maine assault provisions necessarily include the “use or attempted use of physical force.” See 18 U.S.C.. §§ 921(a)(33)(A), 922(g)(9); see also Castleman, 134 S.Ct. at 1414. Under the categorical approach, if any one of the six variants of the Maine assault statute does not necessarily constitute the “use ... of physical force,” then the defendants’ convictions must be reversed. Put differently, to affirm the defendants’ convictions under the categorical approach, all of the subsumed offenses under the Maine statute must have the “use or attempted use of physical force” as an element. 18 U.S.C. §§ 921 (a)(33)(A); see also United States v. Holloway, 630 F.3d 252, 257 (1st Cir.2011) (stating that under the categorical approach, “the [prior] conviction may only serve as a predicate offense if each of the possible offenses of conviction would qualify” as individually satisfying the offense in the subsequent prosecution (citing Shepard, 544 U.S. at 26, 125 S.Ct. 1254)). The defendants focus their argument on the sixth and least severe subsumed offense: the “reckless” causation of “offensive physical contact.” Therefore, we must apply the governing precedent to decide whether this statutory definition necessarily involves the “use ... of physical force.”
C. The Supreme Court’s Decisions in Leocal and Johnson
The Supreme Court’s opinions in Leocal v. Ashcroft, 543 U.S. 1, 125 S.Ct. 377, 160 L.Ed.2d 271 (2004), and Johnson v. United States, 559 U.S. 133, 130 S.Ct. 1265, 176 L.Ed.2d 1 (2010), provided foundational reasoning for subsequent cases relevant to this appeal. In both of these cases, the Supreme Court engaged in statutory interpretation to determine whether the offenses underlying prior state convictions had, as an element, the “use” of physical force as required for purposes of a subsequent federal proceeding.
1. Leocal
In Leocal, the Supreme Court examined a similar question to that facing us today, regarding parallel language in the statutory definition of a “crime of violence” under 18 U.S.C. § 16(a). Under that statute, a “crime of violence” includes “an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another.” 18 U.S.C. § 16(a) (emphasis added). The petitioner in Leocal had previously been convicted in Florida state court for driving under the influence of alcohol (DUI) and causing serious bodily injury. Leocal, 543 *195 U.S. at 3, 125 S.Ct. 377. The Supreme Court held that the petitioner’s DUI conviction was not a crime of violence under 18 U.S.C. § 16. Id. at 4, 125 S.Ct. 377. In so holding, the Court explained that “ ‘use’ requires active employment,” reasoning that “a person would ‘use ... physical force against’ another when pushing him ... [but not] by stumbling and falling into him.” Id. Giving the operative phrase- in 18 U.S.C. § 16(a) its ordinary and natural reading, in context, the Leocal Court held that the “ ‘use ... of physical force against the person or property of another’ ” requires “a higher degree of intent than negligent or merely accidental conduct.” Id. (quoting 18 U.S.C. § 16(a)). The Court also interpreted parallel language in 18 U.S.C. § 16(b), giving that language “an identical construction” and “requiring a higher mens rea than the merely accidental or negligent conduct involved in a DUI offense.” Id. at 11,125 S.Ct. 377.
Additionally, the Court considered the fact that it was “ultimately ... determining the meaning of the term ‘crime of violence.’ ” Id. It reasoned that “[t]he ordinary meaning of this term, combined with § 16’s emphasis on the use of physical force against another person ... suggests a category of violent, active crimes that cannot be said naturally to include DUI offenses.” Id. Therefore, the Court concluded that “[ijnterpreting § 16 to encompass accidental or negligent conduct would blur the distinction between the ‘violent’ crimes Congress sought to distinguish for heightened punishment and other crimes.” Id. Importantly for the instant case, the Leocal Court held only that negligent and accidental conduct did not constitute the “use” of force and thus a crime of violence under 18 U.S.C. § 16; the Court did not reach the question whether reckless conduct would be sufficient. Id. at 13, 125 S.Ct. 377 (“This case does not present us with the question whether a state or federal offense that requires proof of the reckless use of force against a person or property of another qualifies as a crime of violence under 18 U.S.C. § 16.”).
2. Johnson
In Johnson, the Supreme Court considered a related question: “whether the Florida felony offense of battery by ‘[a]ctually and intentionally touching]’ another person, Fla. Stat. § 784.03(l)(a), (2) (2003), ‘has as an element the use ... of physical force against the person of another,’ 18 U.S.C. § 924(e)(2)(B)(I), and thus constitutes a ‘violent felony’ under the Armed Career Criminal Act, § 924(e)(1).” Johnson, 559 U.S. at 135,130 S.Ct. 1265 (alterations in original). The Court observed that “the element of ‘actually and intentionally touching’ under Florida’s battery law is satisfied by any intentional physical contact, ‘no matter how slight.’ ” Id. at 138, 130 S.Ct. 1265 (quoting State v. Hearns, 961 So.2d 211, 218 (Fla.2007)). Even “[t]he most ‘nominal contact,’ such as a ‘ta[p] ... on the shoulder without consent,’ ” is sufficient to constitute a violation of the Florida law. Id. (second and third alterations in original) (quoting Hearns, 961 So.2d at 219).
In determining the definition of “physical force” under the Armed Career Criminal Act (“ACCA”), the Court sought to give the phrase “its ordinary meaning” while keeping in mind the context of its inquiry: defining the statutory category of violent felonies. Id. at 138-40, 130 S.Ct. 1265. In that context, the Court thought “it clear that in the context of a statutory definition of ‘violent felony,’ the phrase ‘physical force’ means violent force — that is, force capable of causing physical pain or injury to another person.” Id. at 140, 130 S.Ct. 1265. The Johnson Court explicitly limited its holding to the ACCA, asserting that its decision would not extend to the *196 Lautenberg Amendment. See id. at 143-44, 130 S.Ct. 1265 (“We have interpreted the phrase ‘physical force’ only in the context of a statutory definition of ‘violent felony.’ We do not decide that the phrase has the same meaning in the context of defining a misdemeanor crime of domestic violence. The issue is not before us, so we do not decide it.”).
D. Pve-Castleman First Circuit Precedent: Nason, Booker, Armstrong I, and Voisine I
Prior to the Supreme Court’s decision in Castleman, the defendants’ arguments were squarely foreclosed by First Circuit precedent; it is this precedent that the Supreme Court has instructed us to reconsider.
In United States v. Nason, 269 F.3d 10 (1st Cir.2001), which also considered the interplay between the Maine simple assault statute and the Lautenberg Amendment, we held that the actus reus of “offensive physical contact” necessarily involved the “use or attempted use of physical force,” id. at 11-12,- 21. Synthesizing the definitions of “physical force” from Black’s Law Dictionary and other dictionaries, we determined that “physical force may be characterized as power, violence, or pressure directed against another person’s body.” Id. at 16. We thus held that § 922(g)(9) does not require that the predicate offense involve “bodily injury,” but rather can be satisfied by “any physical force” — including offensive physical contact — “regardless of whether that force resulted in bodily injury or risk of harm.” Id. at 16-18. Therefore, Nason established that either actus reus prong of the Maine assault statute-bodily injury or offensive physical contact— could serve as a valid predicate conviction for purposes of § 922(g)(9). Id. at 21 (“[B]oth [actus reus] variants of assault regulated under Maine’s general-purpose assault statute necessarily involve the use of physical force.”).
Whereas Nason focused on the actus reus variants of the Maine assault statute for purposes of the Lautenberg Amendment, we later focused on the mens rea variants in United States v. Booker, 644 F.3d 12 (1st Cir.2011). In Booker, we rejected the argument that only an intentional offense could constitute a misdemeanor crime of domestic violence under § 922(g)(9). Id. at 13-14. The appellants in Booker sought to rely on the Supreme Court’s decisions in Leocal and Johnson, analogizing to the definition of “crime of violence” under 18 U.S.C. § 16 and the definition of “violent felony” under the ACCA, 18 U.S.C. § 924(e). Id. at 18-19. We held that those other statutes were not sufficiently analogous to dictate the result in Booker, reasoning that, for example, “[wjhereas the ACCA seeks to protect society at large from a diffuse risk of injury or fatality at the hands of armed, recidivist felons, § 922(g)(9) addresses an acute risk to an identifiable class of victims — those in a relationship with a perpetrator of domestic violence.” Id. at 21. We thus turned to the “plain, unambiguous language of § 922(g)(9),” finding that “the statutory definition of ‘misdemeanor crime of domestic violence’ does not prescribe an intentional mens rea.” Id. (quoting 18 U.S.C. § 922(g)(9)). Therefore, we held “that an offense with a mens rea of recklessness may qualify as a ‘misdemeanor crime of domestic violence’ under § 922(g)(9).” Id. (quoting 18 U.S.C. § 922(g)(9)).
On the initial appeal in this case, United States v. Armstrong, 706 F.3d 1, 5 (1st Cir.2013) (“Armstrong I”), vacated, — U.S. -, 134 S.Ct. 1759, 188 L.Ed.2d 590 (2014), we considered Armstrong’s arguments that the Lautenberg Amendment’s prohibition on gun ownership does not ap *197 ply to non-violent offensive physical contact. We found the defendant’s argument on this issue to be squarely foreclosed by our prior decisions in Nason and Booker. Id. at 2 (citing Booker, 644 F.3d 12; Nason, 269 F.3d 10). On that basis, we rejected Armstrong’s statutory interpretation arguments and affirmed the decision of the district court. Id. at 2-6, 8. That same day, we issued an opinion in United States v. Voisine, 495 Fed.Appx. 101 (1st Cir.2013) (per curiam) (“Voisine I”), vacated sub nom., Armstrong v. United States, — U.S. -, 134 S.Ct. 1759, 188 L.Ed.2d 590 (2014). In a per curiam opinion, we stated that Voisine had raised “the exact same arguments” as those raised in Armstrong I. Id. Because there were “no pertinent factual differences distinguishing” Voisine I from Armstrong I, we incorporated Armstrong I’s reasoning into the Voisine I per curiam opinion and affirmed the district court’s decision. Id. at 102. Both defendants appealed our decisions in to the Supreme Court.
E. Castleman and Its Aftermath
1. The Supreme Court’s Castleman Opinion
Appropriately one year later, while the petitions for writs of certiorari were pending in Armstrong I and Voisine I, the Supreme Court issued its opinion in Cas-tleman, 134 S.Ct. 1405. The defendant in Castleman had pleaded guilty to a Tennessee offense for “intentionally or knowingly caus[ing] bodily injury to” the mother of his child. Id. at 1408-09. After federal authorities subsequently learned that he was selling firearms on the black market, Castleman was indicted on two counts of violating the Lautenberg Amendment. Id. at 1409. He argued that the Tennessee statute did not have the use, or attempted use, of physical force as an element of the offense. • Id. (citing 18 U.S.C. § 921(a)(33)(A)(ii)). The Sixth Circuit affirmed the dismissal of Castleman’s convictions on the § 922(g)(9) counts, holding that the Tennessee conviction was not a valid predicate offense because Castleman might have been convicted for “ ‘causing] a slight, nonserious physical injury with conduct that cannot be described as violent.’ ” See id. at 1409-10 (quoting United States v. Castleman, 695 F.3d 582, 590 (6th Cir.2012)). The Supreme Court reversed, reasoning that Castleman had pleaded guilty to intentionally or knowingly causing bodily injury, which “necessarily involves the use of physical force.” Castleman, 134 S.Ct. at 1414.
.The Court explained that “physical force”-for purposes of § 922(g)(9) encompasses “the common-law meaning of ‘force’ — namely, offensive touching.” Id. at 1410. The Court explained that “ ‘[domestic violence’ is not merely a type of ‘violence’; it is a term of art encompassing acts' that one might not characterize as ‘violent’ in a nondomestic context” — acts like slapping, shoving, pushing, grabbing, hair-pulling, and spitting. Id. at 1411 & n. 5.
The Castleman Court further explained that there are two main categories of assault or battery laws generally used to prosecute domestic abusers: “those that prohibit both offensive touching and the causation of bodily injury, and those that prohibit only the latter.” Id. at 1413. Interpreting “physical force” to exclude a mere “offensive touching” would have rendered the Lautenberg Amendment “ineffectual in at least 10 States — home to nearly thirty percent of the Nation’s population — at the time of its enactment.” Id. (footnote omitted). Therefore, the Court held that the “physical force” requirement is satisfied “by the degree of force that supports a common-law battery conviction” — including an offensive touching. Id.
*198 The Court considered whether it could apply the “categorical approach” articulated in Taylor, 495 U.S. 575, 110 S.Ct. 2143, to resolve the issue, asking if the elements of the Tennessee statute necessarily met the requirements of § 922(g)(9). Castle-man, 134 S.Ct. at 1414. If the answer were in the affirmative, then the Court could conclude that “a domestic assault conviction in Tennessee categorically constitutes a ‘misdemeanor crime of domestic violence.’ ” Id.
Expressing skepticism regarding such a categorical conclusion, the Court stated that “[i]t does not appear that every type of assault defined by [the Tennessee statute] necessarily involves ‘the use or attempted use of physical force, or the threatened use of a deadly weapon.’ ” Id. at 1413-14 (quoting 18 U.S.C. § 921(a)(33)(A)). For example, the Court reasoned that under the Tennessee statute, “[a] threat ... may not necessarily involve a deadly weapon, and the merely reckless causation of bodily injury ... may not be a ‘use’ of force.” Id. at 1414. The Court noted that in Leocal it had “reserved the question whether a reckless application of force could constitute a ‘use’ of force,” id. at 1414 n. 8 (citing Leocal, 543 U.S. 1, 125 S.Ct. 377), but emphasized that “the Courts of Appeals have almost uniformly held that recklessness is not sufficient,” id. (contrasting our holding in Booker, 644 F.3d 12, with the decisions of ten of our sister courts of appeals: the Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, and Eleventh Circuits). The Court declined to hold that a conviction under the Tennessee statute categorically constitutes a misdemeanor crime of domestic violence for purposes of § 922(g)(9). See id. at 1414.
On the heels of its Castleman opinion, the Supreme Court vacated our prior decisions in Voisine I and Armstrong I, and it remanded those two cases for reconsideration in light of its decision in Castleman. See Armstrong, 134 S.Ct. 1759 (“Judgment vacated, and case remanded to the United States Court of Appeals for the First Circuit for further consideration in light of United States v. Castleman, [134 S.Ct. 1405] (2014).”). There is little disagreement that this remand order calls for us to consider the impact of Castleman’s Footnote Eight on our prior precedent, particularly Booker and Nason. In that footnote, the Supreme Court contrasted our Booker holding with the decisions of ten of our sister circuits, noting that “the Courts of Appeals have almost uniformly held that recklessness is not sufficient” to “constitute a ‘use’ of force.” Id. at 1414 n. 8.
2. The First Circuit’s Carter Opinion
In the wake of Castleman and the Supreme Court’s remand of the instant cases, we issued an opinion in United States v. Carter, 752 F.Bd 8 (1st Cir.2014). Among other arguments, the defendant ’ in that case, Wayne Carter, raised similar issues to those examined in Armstrong I. Id. at 9-10. Carter had been convicted in 1997 of a misdemeanor assault in Maine, after his live-in girlfriend at the time, Annie Eagan, told police officers that Carter spit in her face and shoved her right shoulder. Id. at 10. Eagan reported that she was not hurt, that she did not want Carter arrested or charged with an offense, and that she only wanted him removed from the house. Id. at 10-11. Nonetheless, the Maine state prosecutor charged Carter under Maine’s general-purpose assault statute, to which Carter pleaded guilty and was sentenced to time served: thirty days in jail. Id. at 11.
Approximately thirteen years later, in 2010, Carter obtained a loan by pawning a rifle that he had inherited from his dead father. Id. at 10. A records check and *199 further investigation in connection with his pawning activities revealed Carter’s prior misdemeanor assault conviction. Id. The pawn shop’s records showed that Carter had pawned and redeemed three separate rifles multiple times between 2007 and 2010. Id. at 11. All of the rifles were inherited from his father. Id. at 11 n. 2. “The firearms were kept in a locked cabinet at his mother’s house, and Carter only physically possessed the rifles in connection with pawning them.” Id. Based on the foregoing, Carter was charged in a one-count indictment for violating the Lau-tenberg Amendment’s prohibition on gun possession by those convicted of a misdemeanor crime of domestic violence. Id. at 11. After entering a conditional guilty plea, reserving his right to appeal, Carter was sentenced by the district court to be imprisoned for twelve months and one day — a downward variance from the bottom of the Sentencing Guidelines range: eighteen months. Id. at 9, 12. He then appealed, arguing, among other things, that the commission of simple assault by recklessly causing offensive physical contact does not' constitute the “use ... of physical force” as required to establish a misdemeanor crime of domestic violence under the Lautenberg Amendment.. Id. at 10.
On appeal, we noted that although this argument was previously foreclosed by our holding in Booker, “the Supreme Court’s recent decision in Castleman casts doubt upon this holding.” Id. at 18 (citing Cas-tleman, 134 S.Ct. at 1414 & n. 8). In support of that assertion, we cited the Supreme Court’s statements that ‘“the merely reckless causation of bodily injury under [the Tennessee assault statute] may not be a “use” of force,’ ” id. (alteration in original) (quoting Castleman, 134 S.Ct. at 1414), and that “ ‘the Courts of Appeals have almost uniformly held that recklessness is not sufficient’ to ‘constitute a “use” of force,’ ” id. (quoting Castleman, 134 S.Ct. at 1414 n. 8). Although Castleman had not directly overruled our prior decision in Booker, we noted that these statements from the Supreme Court provided a “ ‘sound reason’ for thinking that the Booker panel might well ‘change its collective mind’ in light of Castleman.” Id. at 18 n. 11 (quoting United States v. Rodríguez-Pacheco, 475 F.3d 434, 442 (1st Cir. 2007)).
Despite the Supreme Court’s statements in Castleman calling into question our pri- or precedent on this question, it was unnecessary in Carter to answer the recklessness issue, because Carter potentially could have been resolved via the modified categorical approach: the underlying Shepard documents might have “ultimately show[n] that Carter’s conviction was under one of the other two mens-rea prongs of the statute — ‘intentionally’ or ‘knowingly.’ ” Id. We thus observed that under Castleman, “the validity of Carter’s § 922(g)(9) conviction may depend on which mens-rea prong of the Maine general-purpose assault statute served as the basis for his guilty plea and conviction.” Id. at 18. Examining the record for Shepard documents that could determine which variant of the Maine assault statute was the basis for Carter’s conviction, we found the record incomplete and undeveloped: it was unclear whether such documents existed. See id. at 20-21 (“It is not clear ... whether there are any other ‘approved’ Shepard documents or comparable judicial records available with respect to Carter’s prior assault conviction.... [T]he record is insufficiently developed to determine which variant of the Maine general-purpose assault statute served as the basis for Carter’s conviction.”). Accordingly, we “remand[ed] the case to the district court to allow the parties to further develop the record on this issue,” consistent with the *200 Supreme Court’s opinion in Castleman. Id. at 21. In so doing, we reserved the question presented by the Supreme Court’s vacatur of Armstrong I and Voi-sine I in light of Castleman, allowing us to squarely address that issue in the instant remand.
3. District Courts’ Application of Castleman and Carter
To date, three different district court judges in the First Circuit have applied the reasoning of Castleman’s Footnote Eight regarding these issues; all three opinions concluded that a recklessly committed Maine assault does not necessarily involve the “use” of physical force and thus is not categorically a misdemeanor crime of domestic violence. United States v. Sales, No. 2:13-CR-137-NT, 2014 WL 3405658 (D.Me. July 11, 2014); United States v. Carter, No. 2:10-cr-00155-GZS, 2014 WL 3345045 (D.Me. July 8, 2014); United States v. Hines, No. l:12-cr-00204-JAW, 2014 WL 1875164 (D.Me. May 9, 2014). Each of these three cases is examined below, in the order that they were decided.
a. Hines
The first district court case to apply the decisions in Castleman and Carter to these issues was Hines, 2014 WL 1875164. The defendant in Hines had pleaded guilty in Maine state court to violating the domestic violence assault statute; the Shepard documents revealed no further details regarding the conduct underlying this offense. Id. at *2. Before the district court, the defendant argued, among other things, that a mens rea of recklessness could not satisfy the “use of force” requirement under the Lautenberg Amendment. Id. at *4. The district court noted that pre-Cas-tleman First Circuit precedent had previously foreclosed this argument, and “[t]he question is how Castleman affects the resolution of the issues [the defendant] has raised.” Id. at *7.
Examining Castleman’s Footnote Eight, the court observed that “[t]his footnote, which cited ten circuit courts as concluding that reckless conduct did not constitute ‘use of physical force,’ strongly hinted that the First Circuit’s Booker decision was an outlier.” Id. at *8. The district court then considered the Supreme Court’s vacatur of Armstrong I in light of Castleman. Id. The court explained that “[r]eading Supreme Court tea leaves is chancy, but the First Circuit decision in Armstrong I was consistent with Castleman except for the Circuit Court’s brief recklessness analysis.” Id. Thus, the court found that “[i]t is a short logical step to conclude that the reason the Supreme Court vacated the First Circuit decision in Armstrong I was to pull the First Circuit in line with the other ten circuit courts in the recklessness analysis.” Id. Accordingly, on the basis of Castleman, the vacatur of Armstrong I, and Carter, the district court concluded that it is “questionable” whether a Maine conviction for domestic assault — “without more” — qualifies as a valid predicate conviction for the Lautenberg Amendment. Id. at *9.
b. Carter
Following our remand instructions in Carter, the district court permitted the parties to further develop the record with Shepard documents to determine which subsumed variant of the Maine assault statute formed the basis of Carter’s prior state misdemeanor conviction. Carter, 2014 WL 3345045, at *6. The only additional document available was a transcript of Carter’s plea colloquy in Maine state court, in which Carter’s attorney stated that “‘discovery shows that this was no more than a push on the right shoulder, that it *201 was nothing more serious than that.’ ” Id. at *7. Accordingly, on the basis of all the Shepard documents, the district court was “unable to identify the offense of Carter’s conviction.” Id.
The district court cited Hines, including the statement that “ ‘[i]t is a short logical step to conclude that the reason the Supreme Court vacated the First Circuit decision in [Armstrong /] was to pull the First Circuit in line with the other ten circuit courts in the recklessness analysis.’ ” Id. at *5 (quoting Hines, 2014 WL 1875164, at *8). The court further observed that “while the statement in Castle-man was via dictum in a footnote, ‘it is much more than an offhand comment.... [Cjarefully considered statements of the Supreme Court, even if technically dictum, must be accorded great weight and should be treated as authoritative.’ ” Id. at *6 (quoting Crowe v. Bolduc, 365 F.3d 86, 92 (1st Cir.2004)) (internal quotation marks omitted). Stating that it “cannot ignore the guidance of the Supreme Court and the First Circuit in Castleman, Armstrong and Carter,” the district court concluded that “Carter’s conviction may only stand if it was premised on more than accidental, negligent or reckless conduct.” Id. Faced with the absence of any Shepard documents permitting such a finding, the district court granted Carter’s motion to dismiss the indictment, holding that his 1997 conviction could not serve as a predicate misdemeanor for the Lautenberg Amendment. Id. at *7. .
c. Sales
Sales, 2014 WL 3405658, is the third and, to date, final district court case to apply Castleman and Carter. The defendant in that case, Kenneth Sales, had pleaded guilty in Vermont state court to one count of “assault-simple-mutual affray” because he “engaged in a fight or scuffle entered into by mutual consent.” Id. at *1 (citing Vt. Stat. Ann. tit. 13, § 1023). In that plea colloquy, the Vermont Superior Court judge explained that Sales “recklessly caused bodily injury to a person, and that it was in a fight or scuffle entered into by mutual consent.” Id. The judge further explained that “there was a physical altercation between [Sales] and [his girlfriend] ... and that in the course of it [he] at least recklessly ... caused bodily injury to her, being ... a scratch or a sort of cut that she received.” Id. Explaining the actus reus of bodily injury, the judge stated that “[b]odily injury is any sort of injury, it doesn’t have to be a broken bone or anything like that, it can be a bruise, a cut, kind of anything that hurts.” Id. With respect to the mens rea, the judge explained that “[r]ecklessly means you did not have to intend a particular result, but you engaged in conduct that was not what a reasonable person would do in these circumstances, and had a very high risk that the result would happen.” Id. Subsequent to this assault conviction in Vermont state court, Sales was charged with a violation of the Lautenberg Amendment in federal district court in Maine. Id. at *2.
The district court reviewed the governing precedent, including Castleman, Carter, and the previous two district court decisions described above, Hines and Carter. Id. at *2-3. Observing that the Cas-tleman court emphasized LeocaVs holding that “use” requires active employment, the district court further highlighted that “[t]he Supreme Court also pointed out that Booker is out of step with other circuit courts that have held that recklessness is not sufficient to constitute a ‘use’ of force.” Id.' at *3 (citing Castleman, 134 S.Ct. at 1414 n. 8). Accordingly, the district court opined that “the Supreme Court’s remand of Armstrong ‘in light of Castleman’ is fairly construed as a directive to the First Circuit to reconsider whether an assault committed recklessly is sufficient to meet the federal definition of a misdemeanor *202 crime of domestic violence.” Id The district court agreed with Chief Judge Woodcock that “‘[rjeading Supreme Court tea leaves is chancy,’” id at *4 (quoting Hines, 2014 WL 1875164, at *8), but concluded that “it is hard to miss the message here,” id The court observed that the First Circuit may yet “decide that recklessness is sufficient,” but that it would be “presumptuous” for the district court “to make that determination.” Id Therefore, the district court dismissed the defendant’s indictment. Id
II. Discussion
On remand, the relevant inquiry is whether the “reckless” causation of “offensive physical contact” under Maine law necessarily constitutes the “use or attempted use of physical force” for purposes of the Lautenberg Amendment. Compare Me.Rev.Stat. tit. 17-A, § 207, with 18 U.S.C. §§ 921(a)(33)(A), 922(g)(9). As a matter of statutory interpretation, we need to compare the text of each side of the equation: (a) the definition of the “reckless” causation of “offensive physical conduct” under the Maine assault statutes; and (b) the definition of the “use ... of physical force” under the federal Lauten-berg Amendment. The former inquiry is a question of Maine state law, while the latter is a question of federal law. Applying the relevant precedent, this discussion concludes that the reckless causation of offensive physical contact in Maine does not necessarily constitute the “use” of physical force and thus is not categorically a “misdemeanor crime of domestic violence” under the Lautenberg Amendment.
A. The Meaning of the “Reckless” Causation of “Offensive Physical Contact” Under Maine Law
1. The Meaning of “Reckless”
Under the applicable definition in the Maine Criminal Code, “[a] person acts recklessly with respect to a result of the person’s conduct when the person consciously disregards a risk that the person’s conduct will cause such a result.” Me.Rev. Stat. tit. 17-A, § 35(3)(A). Additionally, “the disregard of the risk, when viewed in light of the nature and purpose of the person’s conduct and the circumstances known to the person, must involve a gross deviation from the standard of conduct that a reasonable and prudent person would observe in the same situation.” Id § 35(3)(C).
The majority opinion describes this definition of “recklessness” as involving “a substantial amount of deliberateness and intent.” Ante, at 183. To support this assertion, the majority follows the government’s brief in emphasizing that the definition requires that a person “consciously” disregard the risk involved, and that this disregard involves a “gross deviation” from the standard of reasonable and prudent conduct. Id at 183-84. Relying on this language, the government argues that “recklessness lies rather close to ‘knowingly’ ” on the “volitional scale,” and that recklessness “is arguably part and parcel of ‘willfully.’ ” Continuing, the government asserts that “[rjecklessly is more akin to deliberately or knowingly.” I disagree.
Contrary to the claim that the Maine definition of recklessness involves “a substantial amount of deliberateness and intent,” the Maine definition is in fact a textbook definition of recklessness, falling squarely within the standard definitions of recklessness in various jurisdictions and as defined by multiple authorities. Indeed, the Maine definition is materially indistinguishable from the definition of recklessness in the Model Penal Code. Cf. Model Penal Code § 2.02(2)(c) (“A person acts recklessly with respect to a material ele *203 ment of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and purpose o'f the actor’s conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor’s situation.”). This Model Penal Code definition contains all of the elements and precise language highlighted by the majority as supposedly establishing “a substantial amount of deliberateness and intent.” Cf. ante, at 183-84 (“consciously ” disregards, “nature and purpose of the person’s conduct and the circumstances known to [him],” and “gross deviation” from the standard of care) (emphases supplied by the majority).
As revealed in the chart below, the Maine definition of recklessness is also consistent with the equivalent definitions in the Model Penal Code, Black’s Law Dictionary, and the majority of First Circuit jurisdictions.
Source, Authority, or Jurisdiction Definition
Model Penal Code § 2.02(2)(e) (emphases added) “Recklessly. A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and purpose of the actor’s conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor’s situation.”
Black’s Law Dictionary 1462 (10th ed.2014) (emphases added) “reckless, adj.. . . Characterized by the creation of a substantial and unjustifiable risk of harm to others and by a conscious (and sometimes deliberate) disregard for or indifference to that risk; heedless; rash,
• Reckless conduct is much more than mere negligence: it is a gross deviation from what a reasonable person would do. See recklessness. . . Cf. careless; wanton . . .”
Black’s Law Dictionary 1462 (10th ed.2014) (emphasis added) “recklessness, n. . . . 1. Conduct whereby the actor does not desire harmful consequence but nonetheless foresees the possibility and consciously takes the risk.
• Recklessness involves a greater degree of fault than negligence but a lesser degree of fault than intentional wrongdoing. 2. The state of mind in which a person does not care about the consequences of his or her actions. — Also termed heedlessness. Cf. wantonness.”
Maine ”A person acts recklessly with respect to a result of the person’s conduct when the person consciously disregards a risk that the person’s conduct will cause such a result. . . [T]he disregard of the risk, when viewed in light of the nature and purpose of the person’s conduct and the circumstances known to the person, must involve a gross deviation from the standard of conduct that a reasonable and prudent person would observe in the same situation.” Me.Rev. Stat. tit. 17-A, § 35(3)(emphases added) (subsections defining “recklessly” under the Maine Criminal Code section setting out “Definitions of culpable states of mind”); see also Stein v. Me. Criminal Justice Acad., 95 A.3d 612, 618 (Me.2014) (applying the foregoing statutory definitions of “recklessly” to the Maine general-purpose assault statute, § 207(1)(A)).
Massachusetts “Reckless failure to act involves an intentional or unreasonable disregard of a risk that presents a high degree of probability that substantial harm will result to another.” Sandler v. Commonwealth, 419 Mass. 334, 644 N.E.2d 641, 643 (Mass.1995). “[Rjeekless conduct involves a degree of risk and a voluntary taking of that risk so marked that, compared to negligence, there is not just a difference in degree but also a difference in land.” Id., 644 N.E.2d at 644. “To prove reckless battery, the Commonwealth must establish ‘(1) that the defendant’s conduct involvefd] a high degree of likelihood that substantial harm will result to another, or that it constitute!)!] . . . disregard of probable harmful consequences to another and (2) that, as a result of that conduct, the victim suffered some physical injury.’ ” United States v. Holloway, 630 F.3d 252, 261 (1st Cir.2011) (quoting Commonwealth v. Welch, 16 Mass.App.Ct. 271, 450 N.E.2d 1100, 1102-03 (Mass.App.Ct.1983)).
“To constitute wanton or reckless conduct, as distinguished from mere negligence, grave danger to others must have been apparent and the defendant must have chosen to run the risk rather than alter his conduct so as to avoid the act or omission which caused the harm.” *204 Commonwealth v. Welansky, 316 Mass. 383, 55 N.E.2d 902, 910 (Mass.1944) (internal quotation marks omitted).
New Hampshire “ ‘Recklessly.’ A person acts recklessly with respect to a material element of an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the circumstances known to him, its disregard constitutes a gross deviation from the conduct that a law-abiding person would observe in the situation. A person who creates such a risk but is unaware thereof solely by reason of having voluntarily engaged in intoxication or hypnosis also acts recklessly with respect thereto.” N.H.Rev.Stat. § 626:2(II)(c) (emphases added).
Puerto Rico Old: “[W]hen the actor has foreseen or is conscious that there exists a high probability that his conduct will produce the criminal act.” P.R. Laws Ann. tit. 33, § 5035 (2012) (unofficial translation supplied). New: “A person acts recklessly when he is conscious that his conduct generates a substantial and unjustified risk that the legally prohibited result or circumstance will be produced.” 2014 P.R. Laws No. 246, art 12 (enacting S.B. 1210, and modifying 'art. 22(3) of Law 146-2012) (unofficial translation supplied).[13]
Rhode Island “[T]he use of the word ‘reckless’ or ‘recklessly’ in penal statutes connotes something more than the negligence necessary to support a civil action for damages, and that the two words impart a disregard by the accused for the consequences of his act and an indifference to the safety of life and limb. . . [T]he distinguishing factor, which properly classifies the operation of a motor vehicle as reckless, is that the evidence shows that a driver has embarked upon a course of conduct which demonstrates a heedless indifference to the consequences of his action.” State v. hunt, 106 R.I. 379, 260 A.2d 149,151 (R.I.1969).
The definitions of “recklessness” in the preceding chart demonstrate that the Maine definition is a perfectly ordinary, textbook definition of the term. There is nothing about the Maine statute that sets it above and beyond the standard definitions provided in the Model Penal Code, Black’s Law Dictionary, and the other jurisdictions in the First Circuit. Nor does it seem that the Model Penal Code and the First Circuit jurisdictions are unique in their definitions of recklessness. See, e.g., Ariz.Rev.Stat. § 13-105 (“ ‘Recklessly’ means, with respect to a result or to a circumstance described by a statute defining an offense, that a person is aware of and consciously disregards a substantial and unjustifiable risk that the result will *205 occur or that the circumstance exists. The risk must be of such nature and degree that disregard of such risk constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation ....”) (emphases added); N.Y. Penal Law § 15.05(3) (“A person acts recklessly with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation.”) (emphases added). Thus, the Maine definition of “recklessness” is far from extraordinary, but rather embraces the standard, generally accepted definition of the term.
Applying that definition, I disagree with the government’s assertion that “[Recklessly is more akin to deliberately or knowingly” than negligently. The majority opinion echoes this claim, arguing that “Maine’s definitions of knowingly as contrasted with recklessly differ primarily in their description of the degree of the person’s awareness of the likelihood that the result will occur.” Ante, at 184. The Supreme Court has held that negligent conduct cannot constitute the “use” of force. See Castleman, 134 S.Ct. at 1414 n. 8; Leocal, 543 U.S. at 9, 125 S.Ct. 377. On a volitional spectrum from “negligently” (clearly insufficient to constitute the “use” of force) to “intentionally” (clearly sufficient), the government and the majority seeks to place “recklessly” closer to the latter end. Yet the differences between the definitions of “recklessly” and “criminal negligence” are just as small as (if not smaller than) the differences between “knowingly” and “recklessly.” See Fernández-Ruiz, 466 F.3d at 1130 (“To the extent recklessness differs from criminal negligence, ‘[t]he difference between them is that criminal negligence requires only a failure to perceive a risk, as compared to the recklessness requirement of an awareness and conscious disregard of the risk.’ ” (quoting In re William G., 192 Ariz. 208, 963 P.2d 287, 292 n. 1 (Ariz.Ct.App.1997))); see also 1 Charles E. Torcía, Wharton’s Criminal Law § 27 (15th ed.1993). Indeed, just as Maine’s definitions of knowingly and recklessly “differ primarily in their description of the degree of the person’s awareness of the likelihood that the result will occur,” ante, at 184 (emphasis added), so too do Maine’s definitions of recklessness and negligence “differ primarily in their description of the degree of the person’s awareness' of the likelihood that the result will occur,” id. Compare Me.Rev.Stat. tit. 17-A, § 35(3)(A) (“A person acts recklessly with respect to a result of the person’s conduct when the person consciously disregards a risk that the person’s conduct will cause such a result.”), with id. § 35(4)(A) (“A person acts with criminal negligence with respect to a result of the person’s conduct when the person fails to be aware of a risk that the person’s conduct will cause such a result.”). Therefore, I find the attempt by the government and the majority to establish that “reckless” conduct in Maine is akin to knowing, willful, or intentional conduct, or involves a “a substantial amount of deliberateness and intent,” to be unavailing.
2. The Meaning of “Offensive Physical Contact”
In this context, the actus reus of “offensive physical contact” has two constituent elements: first, there must be “physical contact,” and second, the physical contact must also be “offensive.” Under Maine law, the physical contact required is “not limited to direct touchings, but also c[an] *206 be effected by indirect touchings (e.g., the touching of items intimately connected to the body, such as clothing or a cane, customarily regarded as part and parcel of an individual’s ‘person’).” Nason, 269 F.3d at 19 (citing State v. Rembert, 658 A.2d 656, 658 (Me.1995)).
Determining whether the physical contact is “offensive” is an objective test: courts ask whether a reasonable person would find the physical contact to be offensive, under the particular circumstances involved. See United States v. Pettengill, 682 F.Supp.2d 49, 56 (D.Me. 2010) (stating that “ ‘offensive physical contact’ means ‘physical contact which a reasonable person would find offensive under the circumstances’ ” (quoting Donald G. Alexander, Maine Jury Instruction Manual § 6-59 (4th ed.2003)); see also State v. Pozzuoli, 693 A.2d 745, 747 (Me. 1997)) (“[T]he question is whether a reasonable person would find the contact to be offensive.... ”); Restatement (Second) of Torts .§ 19 (“A bodily contact is offensive if it offends a reasonable sense of personal dignity.”). Offensive physical contact, therefore, involves “ ‘something less than bodily injury ... but requires more than a mere touching of another.’ ” Nason, 269 F.3d at 19 (alteration in original) (quoting Pozzuoli, 693 A.2d at 747). In examining the Maine assault statute, we have previously observed that “[t]wo factors distinguish mere touchings from offensive physical contacts: the mens rea requirement, and the application of a ‘reasonable person’ standard to determine whether a contact is offensive.” Nason, 269 F.3d at 19 (citations omitted). Accordingly, to recklessly cause an offensive physical contact in Maine, a person must consciously disregard a risk that his or her conduct will cause physical contact — something more than a mere touching — that a reasonable person would find to be offensive under the circumstances. See Me. Rev.Stat. tit. 17-A, § 35(3)(A); Nason, 269 F.3d at 19; Pettengill, 682 F.Supp.2d at 56; Pozzuoli 693 A.2d at 747. Moreover, the disregard of that risk “when viewed in light of the nature and purpose of the person’s conduct and the circumstances known to the person, must involve a gross deviation from the standard of conduct that a reasonable and prudent person would observe in the same situation.” Me. Rev.Stat. tit. 17-A, § 35(3)(C).
B. The Meaning of “Use ... of Physical Force” Under Federal Law
1. The “Use” of “Force” and Common-Law Battery
The following discussion demonstrates that under the Lautenberg Amendment, the use-of-force requirement can be satisfied by an actus reus of an offensive touching, but such an offensive touch must be committed with a mens rea of intent rather than mere recklessness. In Castleman, the Supreme Court held that “force,” for purposes of the Lautenberg Amendment, incorporates the common-law meaning of “force.” Castleman, 134 S.Ct. at 1410-11. The Court further stated that “it makes sense for Congress to have classified as a ‘misdemeanor crime of domestic violence’ the type of conduct that supports a common-law battery conviction.” Id. at 1411. On that basis, the Court held that “the requirement of ‘physical force’ is satisfied, for purposes of § 922(g)(9), by the degree of force that supports a common-law battery conviction” — including an offensive touching. Id. at 1413.
I agree with the government’s contention that “it makes sense for Congress to have classified as a ‘misdemeanor crime of domestic violence’ ” not only “the type of conduct that supports a common-law battery conviction,” id. at 1411, but also the culpable mental states that support a bat *207 tery conviction under the common law. See, e.g., Freed, 401 U.S. at 607-08, 91 S.Ct. 1112 (‘“(W)here Congress borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken and the meaning its use will convey to the judicial mind unless otherwise instructed.’ ” (alteration in original) (quoting Morissette v. United States, 342 U.S. 246, 263, 72 S.Ct. 240, 96 L.Ed. 288 (1952))); see also Sekhar v. United States, — U.S. -, 133 S.Ct. 2720, 2724, 186 L.Ed.2d 794 (2013) (“It is a settled principle of interpretation that, absent other indication, ‘Congress intends to incorporate the well-settled meaning of the common-law terms it uses.’ ” (quoting Neder v. United States, 527 U.S. 1, 23, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999))). Thus, as urged by both parties here and as suggested by the Supreme Court in Castle-man, I turn to examine the culpable mental states that attach to the common-law crime of battery. See Castleman, 134 S.Ct. at 1410-11.
In Johnson, the Supreme Court explained that “the common-law crime of battery ... consisted of the intentional application of unlawful force against the person of another.” Johnson, 559 U.S. at 139, 130 S.Ct. 1265 (emphasis added). According to Supreme Court precedent, therefore, although the Lautenberg Amendment’s “force” requirement can be satisfied by an actus reus of an offensive touching, such offensive contact must involve a mens rea of intent rather than mere recklessness. See id.; see also Bailey v. United States, 516 U.S. 137, 143, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995) (defining the word “use” for purposes of the pre-1998 text of 18 U.S.C. § 924(c) — which had provided certain penalties if the defendant “uses or carnes a firearm” during a crime of violence — and holding that such “use” required “active employment” and not “mere possession of a firearm”), superseded by statute, Bailey Fix Act, Pub.L. No. 105386, 112 Stat. 3469 (1998), as recognized in Abbott v. United States, 562 U.S. 8, 131 S.Ct. 18, 178 L.Ed.2d 348 (2010); Rembert, 658 A.2d at 658 (stating that “[ujnpermitted and intentional contacts ... [are] actionable as an offensive contact”); Lynch v. Commonwealth, 131 Va. 762, 109 S.E. 427, 428 (Va.1921) (“To constitute battery there must be some touching of the person of another, but not every such touching will amount to the offense. Whether it does or not will depend, not upon the amount of force applied, but upon the intent of the actor.”); id. at 428 (reasoning that when a man placed his hand on a woman’s shoulder after she already rejected his romantic advances, the evidence was sufficient to justify a verdict of guilt for battery due to the defendant’s “willful violation of the sanctity of her person” (emphasis added)); Black’s Law Dictionary 182 (10th ed.2014) (defining tortious battery as a “nonconsensual, intentional, and offensive touching of another without lawful justification”).
The sources cited by the government do not demonstrate otherwise. These sources suggest, at best, that a common-law battery by “bodily injury” or “infliction of harm” can be committed recklessly; they do not establish that a common-law battery by “offensive physical contact” can be committed recklessly. See, e.g., Model Penal Code § 211.1(l)(a) (“A person is guilty of assault if he ... attempts to cause or purposely, knowingly or recklessly causes bodily injury to another....”); Wayne R. LaFave, 2 Substantive Criminal Law § 16.2(a) (2d ed.) (“The modern approach, as reflected in the Model Penal Code, is to limit battery to instances of physical injury and cover unwanted sexual advances by *208 other statutes.”); id. § 16.2(c)(2) n. 32 (“[W]ith the tort of battery an intention to injure or touch offensively is needed”); see also Commonwealth v. Hawkins, 157 Mass. 551, 32 N.E. 862, 863 (1893) (stating that “the intent necessary to constitute” an offense of assault and battery is the “intentional doing of an action which, by reason of its wanton or grossly negligent character, exposes another to personal injury, and causes such an injury,” without saying anything regarding whether such an offense could be committed by causing offensive physical contact).
The weakness of the government’s argument is revealed by its selective citation and selective quoting. For example, the government quotes a criminal law treatise for the proposition that “a substantial majority of the battery-type statutes” in modern criminal codes “expressly state that the crime may be committed by recklessness,” but conveniently omits the immediately following clause at the end of that sentence: “ — that is,” where there is subjective awareness of the high risk of physical injury.” LaFave, supra, § 16.2(c)(2) (emphasis added). The unabridged sentence says nothing about whether a battery by offensive touching can be committed by recklessness. Indeed, in the same section, the cited treatise states that the modern approach “limit[s] battery to instances of physical injury.” Id. § 16.2(a). Furthermore, the treatise explains that the Model Penal Code’s assault provision “covers only causing ‘bodily injury,’ on the ground that ‘offensive touching is not sufficiently serious to be made criminal, except in the case of sexual assaults as provided’ elsewhere in the Code.” Id. § 16.2(a) n. 6 (quoting Model Penal Code § 211.1 cmt. at 185 (1980)). Given the foregoing, there is no justification for the majority’s heavy reliance on the legislative history of the Lautenberg Amendment. See, e.g., Rubin v. United States, 449 U.S. 424, 430, 101 S.Ct. 698, 66 L.Ed.2d 633 (1981) (“When we find the terms of a statute unambiguous, judicial inquiry is complete, except ‘in rare and exceptional circumstances.’ ” (quoting Tenn. Valley Auth. v. Hill, 437 U.S. 153, 187 n. 33, 98 S.Ct. 2279, 57 L.Ed.2d 117 (1978)) (internal quotation marks and citation omitted)).
Contrary to the government’s arguments, our decision in United States v. Bayes, 210 F.3d 64 (1st Cir.2000), supports the conclusion that battery by offensive touching requires intent and not mere recklessness with respect to the offensiveness of the contact. In Bayes, we evaluated the defendant’s challenge to the sufficiency of the evidence to support his conviction for simple assault under 18 U.S.C. § 113(a)(5). Bayes, 210 F.3d at 65. The factual basis for the offense was that the defendant, Christopher Bayes, while on a Delta Airlines flight from Atlanta to England, “ ‘put his hand on [a flight' attendant’s] buttocks and rubbed [her] buttocks and grabbed at the bottom of [her] buttocks,’ ” which a nearby passenger described as Bayes “ ‘reaching behind the flight attendant and grabbing her in the rear end’ ” and “ ‘squeezing.’ ” Id. at 66 (second and third alterations in original) (quoting trial testimony). “Bayes persisted in being unruly despite periodic warnings from members of the crew.” Id. “A scuffle ensued, ending only after the captain dumped thousands of gallons of fuel, diverted the aircraft in mid-flight, and made an unscheduled landing [in Maine] so that Bayes could be taken off the plane....” Id. [.
Bayes argued that simple assault required “a specific kind of intent that the government failed to prove.” Id. Namely, Bayes contended that “the government did not prove that he intended to injure [the flight attendant] or to threaten her with harm when he touched her on the but *209 tocks.” Id. at 67. Because the statute in question, § 113(a)(5),' criminalized “[simple assault” but did “not define that term in any way,” we “turn[ed] to the common law for additional guidance.” Id. at 67-68. We stated that “the common law provided that an assault committed by way of a battery did not require an intent to cause or to threaten an injury as long as the defendant touched another in a deliberately offensive manner without a valid reason to do so.” Id: at 69 (emphasis added). We reviewed prior opinions and determined that they “support the conclusion that, in a prosecution for simple assault under § 113(a)(5), it is sufficient to show that the defendant deliberately touched another in a patently offensive manner without justification or excuse.” Id. (emphases added). Therefore, we held that the evidence supported Bayes’s conviction because “the jury was entitled to conclude that Bayes had groped [the flight attendant] in a way that could not have been accidental, that must have been deliberate, and that was patently offensive.” Id. (emphases added).
The preceding language from Bayes reveals that the mens rea required for a § 113(a)(5) battery-by-offensive-touching conviction is intent and not mere recklessness: the .defendant must “deliberately” (and not accidentally) touch the victim in a “deliberately offensive” manner. See id. By contrast, under the Maine assault statutes, a defendant can commit the offense recklessly by merely disregarding (a) the risk that his conduct will cause physical contact (more than a mere touching) to occur, and (b) the risk that a reasonable person would find that physical contact to be offensive. See Me.Rev.Stat. tit. 17-A, § 35(3)(A). The “deliberate” intent that we required in Bayes is thus not necessary for a conviction for recklessly committed assault or domestic-violence assault in Maine.
Therefore, the following conclusion must be drawn: under the Lautenberg Amendment, the “force” requirement can be satisfied by an actus reus of an offensive touching, but such an offensive touch must involve a mens rea of intent rather than mere recklessness. That is, the defendant must intend to touch and intend that the touch be offensive, rather than merely disregard the risk that a touch will occur and be considered offensive. By contrast, the Maine statutes at issue permit conviction when the defendant merely disregards a risk that his or her conduct will cause physical contact that a reasonable person would find to be offensive. Accordingly, applying a categorical approach and the Supreme Court’s statements in Castleman and Johnson, a conviction under either of the Maine assault statutes encompasses conduct beyond the common-law definition of battery, and thus does not necessarily establish a misdemeanor crime of domestic violence under the Lautenberg Amendment. This conclusion mandates reversal here and is further supported by Footnote Eight of Castleman and the circuit court cases cited therein, as explained below.
2. Castleman’s Footnote Eight
In Castleman, the Supreme Court opined that the “merely reckless causation of bodily injury under the [Tennessee assault statute] may not be a ‘use’ of force.” Castleman, 134 S.Ct. at 1414. The Court explained this statement in Footnote Eight, noting that .Leocal held that “ ‘ “use” requires active employment.’ ” Id. at 1414 n. 8 (quoting Leocal, 543 U.S. at 9, 125 S.Ct. 377). The Court then stated that “the Courts of Appeals have almost uniformly held that recklessness is not sufficient,” contrasting decisions from ten other circuit courts of appeals against our opinion in Booker, which the Supreme Court *210 listed as the only outlier.[14] Together, as explained in more detail below, these cases establish that a predicate “crime of violence” under 18 U.S.C. § 16 and analogous provisions must be committed with a degree of intentionality greater than recklessness. Although § 16 is a different federal statute, its language is substantially similar to the definition of a misdemeanor crime of domestic violence for purposes of the Lautenberg Amendment. In particular, the definition in § 16(a) is nearly identical to the equivalent definition for § 922(g)(9). Compare 18 U.S.C. § 16(a) (defining the term “crime of violence” to mean “an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another”), with 18 U.S.C. § 921(a)(33)(A) (defining a “misdemeanor crime of domestic violence” as an misdemeanor offense that “has, as an element, the use or attempted use of physical force”). Keeping the, similarity of the analogous statutes in mind, I review below each case cited by the Supreme Court in Castleman’s Footnote Eight.
a. Second Circuit
The Second Circuit considered the issue in Jobson v. Ashcroft, 326 F.3d 367, 369 (2d Cir.2003), which examined whether second-degree manslaughter in New York constituted a crime of violence under 18 U.S.C. § 16(b). A “crime of violence” is defined in § 16(b) as “any other offense that is a felony and that, by its nature, involves a substantial risk; that physical force against the person or property of another may be. used in the course of committing the offense.” 18 U.S.C. § 16(b).[15] The Second Circuit reiterated its previous holding that “the verb ‘use’ in section 16(b), particularly when modified by the phrase ‘in the course of committing the offense,’ suggests that section 16(b) ‘contemplates only intentional conduct and *211 refers only to those offenses in which there is a substantial likelihood that the perpetrator will intentionally employ physical force.’ ” Jobson, 326 F.3d at 373 (internal quotation marks omitted) (quoting Dalton v. Ashcroft, 257 F.3d 200, 208 (2d Cir. 2001)).
To satisfy § 16(b)’s definition of “crime of violence,” therefore, a defendant must have risked having to intentionally, use force to commit the offense. Id. at 374; see also id. at 373 (“[T]he risk in section 16(b) concerns the defendant’s likely use of violent force as a means to an end.”). “By contrast, a defendant who is convicted of second-degree manslaughter, like other offenses of pure recklessness, may lack any ‘intent, desire or willingness to use force or cause harm at all.’” Id. at 374 (quoting United States v. Parson, 955 F.2d 858, 866 (3d Cir.1992), abrogated on other grounds by Begay v. United States, 553 U.S. 137, 128 S.Ct. 1581, 170 L.Ed.2d 490 (2008)). Accordingly, the Second Circuit concluded that second-degree manslaughter in New York is not a crime a violence under § 16(b) and thus is not an aggravated felony justifying removal under the immigration laws. Id. at 376.
b. Third Circuit
The Third Circuit reached a similar result in Oyebanji v. Gonzales, 418 F.3d 260, 263 (3d Cir.2005), which also involved immigration removal proceedings premised upon the definition of “crime of violence” under § 16(b). The petitioner’s underlying conviction was for vehicular homicide under New Jersey law, which requires proof of recklessness. Id. The Third Circuit thus stated that it was “required to decide the very question that the Leocal Court did not reach” — “ ‘whether a state or federal offense that requires proof of the reckless use of force against a person or property of another qualifies as a crime of violence under 18 U.S.C. § 16.’” Id. (quoting Leocal, 543 U.S. at 13, 125 S.Ct. 377).
Citing the Leocal Court’s distinction between “violent” crime and merely “accidental” conduct, the Third Circuit explained that “[t]he quintessential violent crimes — murder, assault, battery, rape, etc. — involve the intentional use of actual or threatened force against another’s person, and the term ‘accidental’ is most often used to describe events that did not ‘occur [ ] as a result of anyone’s purposeful act.’ ” Id. at 264 (second alteration in original) (citing Black’s Law Dictionary 16 (8th ed.1999)). The Third Circuit reasoned that “accidental” conduct “is not enough to qualify as a crime of violence” under Leo-cal, and it decided that such “accidental” conduct “would seem to include reckless conduct.” Id. The panel further stated that the Third Circuit ought to follow the Supreme Court’s “‘considered dicta’” in Leocal, id. at’ 265 (quoting McCoy, 950 F.2d at 19), and that while the panel “ap-preeiate[d]” the government’s arguments, it “believe[d] that those arguments must be directed to the Supreme Court or Congress.” Id.
c. Fourth Circuit
The Fourth Circuit considered these issues in García v. Gonzales, 455 F.3d 465 (4th Cir.2006). Garcia also involved removal proceedings and whether a certain predicate offense qualified as an aggravated felony by virtue of being “a crime of violence” under 18 U.S.C. § 16. Id. at 468. The predicate offense considered in Garcia was reckless assault in the second degree under New York law, which provides that “ ‘[a] person is guilty of assault in the second degree when ... (4) He recklessly causes serious physical injury to another person by means of a deadly weapon or a dangerous instrument.’ ” Id. *212 (alterations in original) (quoting N.Y. Penal Law. § 120.05). The Fourth Circuit summarily determined that the first definition of “a crime of violence” under § 16(a) — “an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another” — did not apply to the New York second-degree reckless assault conviction. Id. at 468 (quoting 18 U.S.C. § 16(a)). The court reasoned that the definition of the New York offense “does not contain an element that there be the intentional employment of physical force against a person or thing, and thus is beyond the scope of 18 U.S.C. § 16(a).” Id. (emphasis added).- Therefore, according to the Fourth Circuit, “the use ... of physical force” requires the intentional employment of physical force. See id.
Turning to the definition in § 16(b), the Fourth Circuit held that “recklessness, like negligence, is not enough to support a determination that a crime'is a ‘crime of violence.’ ” Id. at 469. In making this determination, the Fourth Circuit held that in order to satisfy § 16(b)’s requirement that the predicate offense “involve a substantial risk that physical force against the person or property of another may be used,” the force must “be applied as a means to an end.” Id. (quoting Bejarano-Urrutia v. Gonzales, 413 F.3d 444, 447 (4th Cir.2005)) (internal quotation marks omitted); see also id. (“[W]e are of opinion that 18 U.S.C. § 16(b) requires that the substantial risk involved be a substantial risk that force will be employed as a means to an end in the commission of the crime; not merely that reckless conduct could result in injury.”).
d.Fifth Circuit
The Fifth Circuit considered the definition of “crime of violence” under 18 U.S'.C. § 16(b) in United States v. Chapa-Garza, 243 F.3d 921 (5th Cir.2001). In that case, the Fifth Circuit reasoned that § 16(b) requires that “the offender intentionally use the force against the person or property of another.” Id. at 927. Because “[intentional force against another’s person or property is virtually never employed td commit” the offense of felony driving while intoxicated (“DWI”) in Texas, the court held that “felony DWI is not a crime of violence as defined by 18 U.S.C. § 16(b).” Id.
e.Sixth Circuit -
In United States v. Pórtela, 469 F.3d 496, 499 (6th Cir.2006), the Sixth Circuit followed the “ ‘considered dicta’ ” of Leocal and the reasoning of the Third and Fourth Circuits to hold that “a crime requiring only recklessness does not qualify as a ‘crime of violence’ under 18 U.S.C. § 16,” nor, because it “uses identical language,” under U.S. Sentencing Guidelines Manual (U.S.S.G.) § 2L1.2(b)(l).
f.Seventh Circuit
Similarly, the Seventh Circuit followed its sister circuits in holding that “reckless crimes are not crimes of violence under Section 16(b).” Jiménez-González v. Mukasey, 548 F.3d 557, 560 (7th Cir.2008). The Seventh Circuit found persuasive the Third Circuit’s reasoning in Oyebanji that the use of physical force requires active employment and not merely negligent or accidental conduct. Id. (citing Oyebanji, 418 F.3d at 263). The Seventh Circuit further reasoned that “accidental and reckless crimes are not the type of ‘violent’ crimes Congress intended to distinguish as worthy of removal.” Id. To support its holding, the Seventh Circuit emphasized the “primary distinction” that crimes of violence involve intentional - conduct whereas most crimes of recklessness in *213 volve non-purposeful conduct. See id. at 561-62.
g. Eighth Circuit
Likewise, the Eighth Circuit stated that the Leocal “Court’s reasoning suggests that crimes requiring only reckless disregard for the risk of physical injury to another are not crimes of violence under § 16.” United States v. Torres-Villalobos, 487 F.3d 607, 615 (8th Cir.2007). Examining Minnesota law, the Eighth Circuit determined that “a person can commit second-degree manslaughter without using force or risking the intentional use of force,” because the crime can be committed recklessly. Id. at 616. Giving examples, the court explained that:
A person can commit this crime by recklessly leaving a child alone with lit candles that later start a fire, by allowing a child to die of dehydration while in the person’s care, by leaving explosives and blasting caps stored in an automobile where they are later ignited by the use of jumper cables, and, indeed, by driving drunk with ‘culpable negligence’ in a manner that causes the death of a passenger.
Id. (internal citations omitted). Therefore, the court held, “the ‘use of force,’ as Leo-cal interpreted that phrase, is not an element of a second-degree manslaughter conviction,” meaning that the Minnesota second-degree manslaughter offense is not a crime of violence under § 16(a). Id. Turning to § 16(b), the court also held that second-degree manslaughter under Minnesota law does not “involve a risk that the perpetrator will intentionally use physical force in the course of committing the offense.” Id. at 616-17.. Because Minnesota second-degree manslaughter can be committed recklessly without the intentional use of force or risking the intentional use of force, the Eighth Circuit held that it is not a crime of violence under § 16. Id. at 617.
h. Ninth Circuit
In Fernández-Ruiz v. Gonzales, 466 F.3d 1121, 1123 (9th Cir.2006) (en banc), the Ninth Circuit held that a prior Arizona assault conviction did not constitute a crime of violence under § 16(a) because that federal statute “covers only those crimes involving intentional conduct,” and thus the merely reckless use of force (as 'covered by the Arizona statute) was insufficient to establish a violation. See also id. (“Because the relevant Arizona statute permits conviction when a defendant recklessly but unintentionally causes physical injury to another, and because the petitioner’s documents of conviction do not prove he intentionally used force against another, we conclude the federal statute does not apply.”). In so holding, the court “agree[d] with [its] sister circuits that the reasoning of Leocal — which merely holds that using force negligently or less is not a crime of violence — extends to crimes involving the reckless use of force.” Id. at 1129. The Ninth Circuit reasoned that Leocal emphasized that crimes of violence cannot be “ ‘accidental.’ ” Id. (quoting Leo-cal, 543 U.S. at 9, 125 S.Ct. 377). The court defined “accidental” as “ ‘[n]ot having occurred as a result of anyone’s purposeful act,’ ” and it defined “purposeful” as “ ‘[d]one with a specific purpose in mind.’ ” Id. at 1129-30 (alterations in original) (citing Black’s Law Dictionary. 16, 1298 (8th ed.2004)).. The Ninth Circuit further concluded that “[r]eckless conduct, as generally defined, is not purposeful.” Id. at 1130.
“Even more clearly, reckless conduct as defined by Arizona law is not purposeful.” Id. As support for this statement, the Ninth Circuit cited the Arizona criminal statute defining recklessness.. Id. Under that statute, “ ![r]ecklessly’ means ... that *214 a person is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists.” Ariz.Rev.Stat. Ann. § 13-105(10)(c). That “risk must be of such nature and degree that disregard of such risk constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation.” Id. This definition of recklessness is substantially similar to the equivalent Maine definition, as well as the other definitions outlined in the chart in Part 11(A)(1), supra. For purposes of § 16, the Ninth Circuit saw no important differences between negligence and recklessness, considering each mens rea to constitute the type of non-purposeful conduct that Leocal held was insufficient to establish a crime of violence involving the “use” of force. Fernández-Ruiz, 466 F.3d at 1129-30. The court reasoned that the “plain meaning” of the word “use” denotes that “physical force is instrumental to carrying out the crime.” Id. By contrast, the “subjective awareness” of risk that characterizes a reckless act “is not the same as the intentional use of physical force against the person of another.” Id. The court further explained that “[t]he bedrock principle of Leocal is that to constitute a federal crime of violence an offense must involve the intentional use of force against the person or property of another.” Id. at 1132. Therefore, the Ninth Circuit concluded that recklessness is not “a sufficient mens rea to establish that a conviction is" for a crime of violence under § 16.” Id. at 1130.
i. Tenth Circuit
In United States v. Zúñiga-Soto, 527 F.3d 1110, 1113 (10th Cir.2008), the Tenth Circuit considered whether the “crime of violence” enhancement provision under U.S.S.G. § 2L1.2 applied to the appellant’s prior Texas state conviction for assaulting a public servant. Applying the commentary to this U.S.S.G. provision, the Tenth Circuit’s “sole task” was to whether the appellant’s “prior felony conviction qualifies as a crime of violence because the offense had as an element the use of physical force.” Id. at 1115. Under the appellant’s offense of conviction, a person commits an assault if he or she “intentionally, knowingly, or recklessly causes bodily injury to another.” Tex. Penal Code Ann. § 22.01(a)(1). On appeal to the Tenth Circuit, the appellant argued that “his prior conviction did not have as an element the use of physical force because the Texas assault statute’s mens rea component could be satisfied by recklessness.” Zúñi-ga-Soto, 527 F.3d at 1115.- The Tenth Circuit agreed, citing Leocal, its own precedent, and “the persuasive reasoning of [its] sister circuits.” Id. at 1113, 1123.
j. Eleventh Circuit
Finally, applying similar reasoning, the Eleventh Circuit also relied on Leocal and the decisions of the other circuit courts to hold that “a conviction predicated on a mens rea of recklessness does not satisfy the ‘use of physical force’ requirement under [U.S.S.G.] § 2L1.2’s definition of ‘crime of violence.’ ” United States v. Palomino García, 606 F.3d 1317, 1336 (11th Cir.2010). Citing “the near unanimity of the circuit courts on this issue,” the Eleventh Circuit concluded that Leocal “plainly suggests that crimes requiring only a reek-less[] disregard for the risk of physical injury to others are not crimes of violence.” Id. at 1336 n. 16. The Eleventh Circuit further explained that “[b]ecause Arizona law defines recklessness as nothing more than the conscious disregard of a substantial and unjustifiable risk, this is more akin to negligence and cannot be said to require the intentional use of force.” Id. at 1336 (internal citation omitted). Therefore, the court held that an Arizona *215 conviction “predicated on the reckless causation of physical injury does not qualify as a crime of violence under [U.S.S.G.] § 2L1.2.” Id.
C. Comparison of Analogous Statutory Language
As is evident from the discussion above, most of our sister circuits have held that the “use ... of physical force” requires the type of intentional conduct for which mere recklessness cannot suffice. Although these cases involved different provisions than the Lautenberg Amendment, the statutory texts involved are not materially different, and in many cases, are virtually identical. As referenced herein, analogous provisions to the definition of “misdemean- or crime of domestic violence” for purposes of the Lautenberg Amendment are compared in the following chart:
Statute Relevant Language
“misdemeanor crime of domestic violence,” “has, as an element, the use or attempted use of Lautenberg Amendment, 18 U.S.C. physical force” § 922(g)(9)
18 U.S.C. § 921(a)(33)(A)
“crime of violence,” 18 U.S.C. § 16(a) “has as an element the use, attempted use, or threatened use of physical force against the person or property of another”
_18 Ü.S.C. § 16(a)_
“crime of violence,” 18 U.S.C. § 16(b) “any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense”
18 U.S.C. § 16(b)
“[an] offense . . . that has as an element the use, attempted use, or threatened use of physical force against the person of another” “[c]rime of violence,” U.S.S.G. § 2L1.2
U.S.S.G. § 2L1.2, cmt. l(B)(m).
“has as an element the use, attempted use, or threatened use of physical force against the person of another” “violent felony” under the ACCA, 18 U.S.C. § 924(e)(1)
18 U.S.C. § 924(e)(2)(B)(I)
It is readily apparent that the language involved in most of the preceding provisions is nearly identical, and for present purposes is materially indistinguishable.[16]
*216 Moreover, I do not doubt that the Supreme Court was well aware that the cases it cited in Castleman’s Footnote Eight involved different provisions, yet the Court nonetheless contrasted the holdings of our sister circuits in those cases with our holding in Booker before remanding the instant cases to us for reconsideration in light of Castleman. See Castleman, 134 S.Ct. at 1414 n. 8. Thus, to the Supreme Court, these cases and provisions were sufficiently analogous to justify the instant remand. Cf. Smith, 544 U.S. at 233, 125 S.Ct. 1536 (“[Wjhen Congress uses the same language in two statutes having similar purposes, particularly when one is enacted shortly after the other, it is appropriate to presume that Congress intended that text to have the same meaning in both statutes.”); Northcross v. Bd. of Educ. of Memphis City Sch., 412 U.S. 427, 428, 93 S.Ct. 2201, 37 L.Ed.2d 48 (1973) (per cu-riam) (stating that “[t]he similarity of lan-. guage” in two statutory provisions sharing “a common raison d’etre” constitutes “a strong indication that the two statutes shoul’d be interpreted pari passu”). The government and the majority fail to persuasively establish that the meaning of “the use ... of physical force” in these various federal definitions of a “crime of-violence” should be so similar in every other context, yet so different as to be outcome-determinative in the instant context. For those reasons, I find the foregoing precedent more persuasive than the majority opinion here. I thus agree with our sister circuits that the “use ... of physical force” for a “crime of violence” requires the intentional, and not merely reckless, employment of physical force. I find this conclusion to be particularly true for the subsumed offense at issue in the instant case: the combination of a mens rea of “recklessness” with an actus reus of “offensive physical contact.” Cf. Nason, 269 F.3d at 19 (stating that the mens rea requirement is one of two factors that “distinguish mere touchings from offensive physical contacts”).
III. Conclusion
Despite the foregoing precedent from the Supreme Court and our sister circuits, the majority opinion nonetheless seeks to hew to our prior decision in Booker and to resolve these cases, yet again, exactly as we did in Armstrong I and Voisine I. With due respect, for the reasons explained above, I believe that the majority is wrong.
The Lautenberg Amendment is premised upon grave concerns and laudable purposes, as articulated both by the Supreme Court in Castleman and by the majority in this case. I share those concerns and strongly agree with those purposes. However, a general agreement with those goals need not dictate the result here. This case does not present a litmus test for judges, asking whether we oppose domestic violence and gun violence. Were our job so simple, it would be an easy matter to decide in favor of the government. But that is not our role. Our judicial obligations preclude us from such results-oriented decisionmaking.
Rather than deciding on the basis of personal beliefs and policy preferences, or seeking to ensure that the Lautenberg Amendment encompass the broadest possible swath of conduct within its ambit, this case requires us to engage in statutory interpretation. This legal task implicates the difference between Congress’s broad policy goals versus the precise statutory language employed to achieve those ends. That is, does the language chosen by Congress — the-“use or attempted use of physical force” — necessarily apply to all Maine misdemeanor assault convictions for recklessly causing offensive physical contact? Applying the relevant precedent to this question of statutory interpretation coun- *217 seis that we answer this inquiry in the negative and resolve this appeal in favor of the defendants. I conclude that the particular subsumed Maine offense at issue here, the reckless causation of offensive physical contact, does not necessarily require the “use ... of physical force” and thus does not categorically constitute a misdemeanor crime of domestic violence under the Lautenberg Amendment.
For the reasons stated herein, I would reverse the defendants’ convictions. Indeed, I believe that the Supreme Court has obligated us to do so. Therefore, I respectfully dissent.

. See United. States v. Torres-Villalobos, 487 F.3d 607, 616-17 (8th Cir.2007) (holding that Minnesota second-degree manslaughter can be committed recklessly without the intentional use of force, and therefore is not a crime of violence under § 16(a)); Fernández-Ruiz v. Gonzales, 466 F.3d 1121, 1123 (9th Cir.2006) (holding that recldess conduct cannot constitute the "use” of force for purposes of § 16(a)); Garcia v. Gonzales, 455 F.3d 465, 468 (4th Cir.2006) (reasoning that the "use” of "physical force” requires the intentional employment of physical force, and therefore holding that a New York second-degree reckless assault conviction is "beyond the scope” of§ 16(a)).

.- Moreover, the cases involving § 16(b) provide even stronger support for the defendants' position here, as § 16(b) involves language more susceptible than that of § 16(a) or the Lautenberg Amendment to a reading that encompasses reckless conduct. Compare 18 U.S.C. § 16(b) (defining a "crime of violence” as a felony that "involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense”), with Model Penal Code § 2.02(2)(c) (“A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct.”). Yet most courts nonetheless have rejected arguments that § 16(b) can be *189 satisfied by a predicate offense with a mens rea of recklessness. See, e.g., Jobson v. Ashcroft, 326 F.3d 367, 373 (2d Cir.2003) ("[T]he verb use’ in section 16(b), particularly when modified by the phrase 'in the course of committing the offense,’ suggests ' that section 16(b) ‘contemplates only intentional conduct and refers only to those offenses in which there is a substantial likelihood that the perpetrator will intentionally employ physical force.’ ” (internal quotation marks omitted) (quoting Dalton v. Ashcroft, 257 F.3d 200, 208 (2d Cir.2001))).

. In addition to its acknowledgment that this is a "close" case, the majority's reliance on legislative history also suggests -that the statutory text is ambiguous. Cf. Tenn. Valley Auth. v. Hill, 437 U.S. 153, 184 n. 29, 98 S.Ct. 2279, 57 L.Ed.2d 117 (1978) ("When confronted with a statute which is plain and unambiguous on its face, we ordinarily do not look to legislative history as a guide to its meaning.”). Furthermore, the contrasting results reached by the First Circuit and our sister circuits on the interpretation of the phrase "use ... of physical force” provide additional evidence of that statutory text's ambiguity.

. All of the examples cited by the majority'— squeezing, shoving, a squeeze of the arm that causes a bruise, shooting a powerful handgun in the direction of a neighbor’s home, driving a van to make contact with another vehicle and to push the victim’s vehicle into heavy oncoming traffic, a husband throwing a knife towards his wife intending to instill fear but actually striking her, and waving a lit cigarette near a child in anger so that the cigarette touches and burns the child, ante, at 177, 181, 183-84, 184-85 involve intentional conduct that is reckless as to the result, which in nearly all of those examples is bodily injury. By contrast, the Maine statutes at issue here permits conviction for far less, culpable conduct: merely reckless conduct that is also reckless as to the result of offensive physical contact. In so doing, the majority conflates mens rea as to the result with mens rea as to the underlying conduct that causes the result. It is this distinction that explains why common-law battery permits conviction for (1) intentional conduct that is reckless as to the result of bodily injury and (2) intentional conduct that is intentional as to the result of bodily injury or offensive touching, but does not permit conviction for (3) reckless conduct that is merely reckless as to the result of an offensive touching.

. To recklessly cause an offensive physical contact in Maine, a person must consciously disregard a risk that his or her conduct will cause physical contact — something more than a mere touching — that a reasonable person would find to be offensive under the circumstances. See Me.Rev.Stat. tit. 17-A, § 35(3) (defining recklessness); id. § 207(1)(A) (simple assault); id. § 207-A(l)(A) (domestic violence assault). Therefore, to sustain a Maine conviction for this subsumed offense, the defendant need not intend that physical contact occur nor intend that the contact be considered offensive.

. Despite the foregoing, the majority opinion offhandedly rejects the relevance of the mens rea for battery under the common law. See ante, at 182-83 ("The parties agree that, under Castleman, the term 'use of physical force’ also incorporates the common law mens rea for battery.... They disagree about whether reckless acts could or could not constitute batteries at common law, and each side marshals support for its view. We decline the parties’ invitation to define the mens rea of a common law battery....”) (citations omitted). At the same time, the majority cites Castleman for the proposition that the “use” of physical force includes offensive contact, due to the common-law meaning of "force” for purposes of battery. Id. The majority opinion thus relies on the actus reus for battery under the common law, but simultaneously rejects the relevance of the accompanying mens rea for common-law battery. See id. In so doing, the majority fails to sufficiently justify its decision to "decline” the parties’ “invitation” to consider the import of the mens rea of common-law battery to the question at bar. Such a decision requires justification, particularly because the Supreme Court in Castleman also extended an “invitation” for us to consider this issue when it explained that Congress intended to classify as a " 'misdemeanor crime of domestic violence' the type of conduct that supports' a common-law battery conviction.” See Castle-man, 134 S.Ct. at 1411.
Nothing in Castleman suggests that the phrase “type of conduct” refers only to the actus reus for battery and not also the accompanying mens rea. Indeed, the contrary conclusion makes far more sense. If Congress meant to incorporate the common-law crime of battery, it most likely meant to incorporate both the actus reus and its accompanying mens rea. See, e.g., United States v. Zhen Zhou Wu, 711 F.3d 1, 18 (1st Cir.2013) ("'In the criminal law, both a culpable mens rea and a criminal actus reus are generally required for an offense to occur.’ ” (quoting United States v. Apfelbaum, 445 U.S. 115, 131, 100 S.Ct. 948, 63 L.Ed.2d 250 (1980))); United States v. Cornelio-Pena, 435 F.3d 1279, 1286 (10th Cir. 2006) (stating that “most crimes ... requiref] both mens rea and actus reus ”); cf. United States v. Freed, 401 U.S. 601, 607-08, 91 S.Ct. 1112, 28 L.Ed.2d 356 (1971) (explaining that when "Congress borrows terms of art” from the common law, "it presumably knows and adopts the cluster of ideas that were attached to each borrowed word” (internal quotation marks and citation omitted)).

. Violation of either provision — the general assault offense or "domestic violence assault" — constitutes a "Class D” crime under the Maine Criminal Code, which is equivalent to a misdemeanor. See State v. Allen, 377 A.2d 472, 475 n. 4 (Me.1977) ("We therefore deem Class D and Class E crimes to be the Criminal Code equivalents of misdemeanors.”).

. The situation in Puerto Rico merits some further explanation. Historically, under Puerto Rico’s Penal Code, there were two culpable mental states: "intent” and “negli- ■ gence.” See P.R. Laws Ann. tit. 33, §§ 4650-4652 (2004). The definition of "intent” included three variants, generally corresponding to the concepts of "purposeful,” "knowing,” and "reckless” conduct under the Model Penal Code. See id. § 4651; see also Dora Neváres-Muñiz, Recodification of Criminal Law in a Mixed Jurisdiction: The Case of Puerto Rico, 12.1 Elec. L Comp. L. 16 (May 2008), available at http://www.ejcl.org/121/art 121-14.pdf. In the 2012 version of the Puerto Rico Penal Code, the third definition of “intent” covered reckless conduct: "when the actor has foreseen or is conscious that there exists a high probability that his conduct will produce the criminal act.” P.R. Laws Ann. tit. 33, § 5035 (2012) (unofficial translation supplied).
In 2014, a new law was proposed, passed by both the Puerto Rico Senate and the House of Representatives, and sent to the Governor for his approval. See S.B. 1210 (P.R.2014). That law was signed and approved on December 26, 2014, and it takes effect on March 26, 2015. See 2014 P.R. Laws No. 246. Article 12 of the new law eliminates the old culpable mental states (intent and negligence) and explicitly replaces them with the four mental states in the Model Penal Code: purposely, knowingly, recklessly, and negligently. Compare id. art. 12 (modifying art. 22 of Law No. 146-2012), with Model Penal Code § 2.02(2); see also P.R. House of Representatives, P. del S. 1210 Informe Positivo 9 (Nov. 13, 2014), http://www.tucamarapr.org/dnncamara/ Documents/Measures/9fda6cce-88d9-4e39-a6 ae-0dcl63f421dc.pdf.

. Id.. To illustrate contrast with our holding in United States v. Booker, 644 F.3d 12, 19-20 (1st Cir.2011), the Supreme Court cited the following circuit court decisions in Castleman's Footnote Eight: United States v. Palomino García, 606 F.3d 1317, 1335-36 (11th Cir.2010); Jiménez-González v. Mukasey, 548 F.3d 557, 560 (7th Cir.2008); United States v. Zúñiga-Soto, 527 F.3d 1110, 1124 (10th Cir. 2008); United States v. Torres-Villalobos, 487 F.3d 607, 615-16 (8th Cir.2007); United States v. Pórtela, 469 F.3d 496, 499 (6th Cir. 2006); Fernández-Ruiz v. Gonzales, 466 F.3d 1121, 1127-32 (9th Cir.2006) (en banc); Garcia v. Gonzales, 455 F.3d 465, 468-69 (4th Cir.2006); Oyebanji v. Gonzales, 418 F.3d 260, 263-65 (3d Cir.2005); Jobson v. Ashcroft, 326 F.3d 367, 373 (2d Cir.2003); United States v. Chapa-Garza, 243 F.3d 921, 926 (5th Cir.2001).

. Given that § 16(b)’s definition includes offenses that merely ''involve[] a substantial risk that physical force ... may be used,” id. (emphasis added), its language is far more susceptible to a reading that it encompasses reckless conduct than is the equivalent language for § 16(a) and § 922(g)(9), which both require the "use” or "attempted use” of "physical force.” See supra n. 2; see also 18 U.S.C. § 16(a); id. § 922(g)(9); id. § 921(a)(33)(A); Me.Rev.Stat. tit. 17-A, § 35(3) ("A person acts, recklessly with respect to a result of the person’s conduct when the person consciously disregards a risk that the person’s conduct will cause such a result. ... ”); Model Penal Code § 2.02(2)(c) (“A person acts recklessly ... when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct.”). Therefore, the cases holding that reckless conduct is insufficient to support a subsequent § 16(b) conviction provide even stronger support for the defendants' position than do the cases involving § 16(a). Cf. Garcia, 455 F.3d at 468 (reasoning that the "use” of "physical force” requires the intentional employment of physical force, and therefore holding that a New York second-degree reckless assault conviction "does not contain an element that there be the intentional employment of physical force against a person or thing, and thus is beyond the scope of 18 U.S.C. § 16(a)”).

. The majority claims that § 16(a) is "not analogous” to § 922(g)(9). Ante, at 181. I disagree, given that these two provisions contain nearly identical language. Section 16(a) defines a "crime of violence," whereas § 922(g)(9) involves a "misdemeanor crime of domestic violence.” The relevant definition for § 922(g)(9) is an offense that' "has, as an element, the use or attempted use of physical force.” 18 U.S.C. § 921(a)(33)(A). The definition under § 16(a) is materially indistinguishable: an offense that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another.” Id. § 16(a). This definition differs only in the addition of the “threatened use” of physical force as an alternative, and the explanation that the force be used "against the person or property of another.” The former difference (the inclusion of "threatened use”) is neither implicated in the current case nor in any of the analogous precedents referenced herein. The látter change appears to be largely a distinction without a difference, as it is difficult to contemplate how or why the "use of physical force” for purposes of § 922(g)(9) would mean force used in any way other than "against the person or property of another.”